# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

INMUSIC BRANDS, INC.,

                Plaintiff,

      v.

ROLAND CORPORATION,

                Defendant.

Civil Action No. 1:17-cv-00010-MSM-LDA

## PLAINTIFF'S OPPOSITION TO ROLAND CORPORATION'S MOTION TO COMPEL FURTHER DEPOSITION BY JAN WISSMULLER AND FOR SANCTIONS, AND PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ............................................... 2

      A.   The Florida Litigation and the First Deposition ........................................ 3

      B.   The Rhode Island Litigation and the Second Deposition ........................... 4

           1.   Break No. 1 ...................................................................................... 5

           2.   Break No. 2 ...................................................................................... 6

           3.   The Direct and Re-Cross Examinations of Mr. Wissmuller ............ 8

           4.   The Witness and His Counsel Did Not Impede the Examination ...... 9

           5.   The Errata Sheet ............................................................................. 11

III.  ARGUMENT ........................................................................................................ 12

      A.   Legal Standards ........................................................................................ 12

           1.   Rhode Island Law Does Not Prohibit Conferences
                Between a Witness and Counsel During the Deposition
                or Recesses ..................................................................................... 12

           2.   Rule 37 Sanctions Are Not Warranted Where the Opposing
                Party's Objection Is Substantially Justified ................................. 13

      B.   Roland's Motion Should Be Denied As to Questions Regarding Mr.
           Wissmuller's Errata Sheet ....................................................................... 14

           1.   Roland's Counsel Already Asked and Mr. Wissmuller
                Already Answered Questions About the Subject Testimony ................ 14

      C.   Roland's Motion Should Be Denied As to Questions Regarding
           Conversations Between Mr. Wissmuller and His Counsel During
           Breaks as They Are Privileged .................................................................. 15

           1.   Roland's Case Law Is Inapposite ................................................. 15

           2.   inMusic's Counsel Properly Instructed the Witness Not to
                Answer Roland's Counsel's Questions on the Basis of
                Attorney-Client Privilege .............................................................. 16

      D.      Roland's Motion for Sanctions Should Be Denied ................................................. 17

              1.     Neither Mr. Wissmuller nor inMusic's Counsel Improperly Impeded Questioning by Roland's Counsel ............................................. 18

              2.     Roland Did Not Suspend and Agreed to Conclude Mr. Wissmuller's Deposition ............................................................................. 19

IV.    CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**          **Page**

*Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*,
   201 F.R.D. 33 (D. Mass. 2001) ............................................................... 16

*Chesbrough v. Life Care Centers of Am., Inc.*,
   No. WOCV201201339A, 2014 WL 861200 (Sup. Ct. Mass. 2014) ........................ 12, 15

*Hall v. Clifton Precision*,
   150 F.R.D. 525 (E.D. Pa. 1993) ............................................................... 12

*Haskell Co. v. Ga. Pac. Corp.*,
   684 So. 2d 297 (Fla. Dist. Ct. App. 1996) ................................................. 13

*In re Amezaga*,
   195 B.R. 221 (D.P.R. 1996) ..................................................................... 16

*In re Flonase Antitrust Litig.*,
   723 F. Supp. 2d 761 (E.D. Pa. 2010) ....................................................... 15

*In re Stratosphere Corp. Sec. Litig.*,
   182 F.R.D. 614 (D. Nev. 1998) ......................................................... 12, 13, 15

*Kelvey v. Coughlin*,
   625 A.2d 775 (R.I. 1993) ................................................................... 16, 19

*McKinley Infuser, Inc. v. Zdeb*,
   200 F.R.D. 648 (D. Colo. 2001) .............................................................. 13

*New Age Imports, Inc. v. VD Importers, Inc.*,
   No. SACV 17-02154-CJC-KES, 2019 WL 1427468 (C.D. Cal. Feb. 21, 2019) .......... 16

*Odone v. Croda Int'l PLC*,
   170 F.R.D. 66 (D.D.C. 1997) ................................................................. 17

*Phinney v. Paulshock*,
   181 F.R.D. 185 (D.N.H. 1998) ............................................................... 16

*Saalfrank v. Town of Alton*,
   No. 08–cv–46–JL, 2010 WL 839884 (D.N.H. Mar. 5, 2010) ............................. 13

*Soares v. Prospect CharterCARE SJHSRI, LLC*,
   No. 17-306-JJM-LDA, 2018 WL 3489589 (D.R.I. July 19, 2018) .................... 13, 16, 19

*United States v. Kattar*,
   191 F.R.D. 33 (D.N.H. 1999) ................................................................. 16

*West Virginia ex rel. Means v. King*,
   205 W. Va. 708 (W. Va. 1999) ................................................................................................13

**Statutes**

Fed. R. Civ. P. 30(e)(1)(B) ........................................................................................................ 2

Fed. R. Civ. P. 30(e)(1)(B) ...................................................................................................... 11

Fed. R. C. P. 30(c)(2) ...................................................................................................12, 15, 19

**Rules**

Rule 30(c)(2) ............................................................................................................................ 15

Rule 37(a)(5)(A ....................................................................................................................... 13

## I.     INTRODUCTION

Roland Corporation ("Roland") has not met its burden to pierce the attorney-client privilege, nor has it provided a sufficient basis to take a *third* deposition of Mr. Jan Wissmuller on the issue of a "cute" video he saw approximately 10 years ago about which he has little recollection. Mr. Wissmuller, a retired former engineer at inMusic Brands, Inc. ("inMusic"), is a named co-inventor on two of the three patents-in-suit.[1]  At his September 25, 2019 deposition, Mr. Wissmuller answered every substantive question to the best of his ability over five plus hours, despite antagonistic and snide questioning[2] that often attempted to force responses to legal questions about patent scope even after Mr. Wissmuller testified that he lacked competence to answer those types of questions.

Had the Wissmuller deposition played out as Roland's intemperate Motion to Compel (the "Motion") suggests, Roland's counsel would have had the option to suspend the deposition and seek assistance from the Court.  In fact, at the November 7, 2019 chamber conference that preceded the filing of the Motion, Roland's *pro hac vice* counsel misrepresented to the Court that he *had* suspended the deposition.  That is false.  The Motion appears to be a cynical effort to backfill for Roland's counsel's failure to ask certain questions of Mr. Wissmuller, and the failure even to authenticate the video that forms the basis for a series of questions.  Those technical failures do not warrant yet another deposition of Mr. Wissmuller.  Nor does Roland identify any precedent from this jurisdiction that would support the extreme relief Roland seeks, i.e., an Order compelling Mr. Wissmuller to disclose communications with his attorney.

Specifically, the Motion seeks another deposition of Mr. Wissmuller on two topics:  (1) "the

---

[1] As a former employee, Mr. Wissmuller is represented by inMusic's counsel.

[2] Q:  "What I'm asking you about are specific words.  I don't need you to tell me, oh, this is what we invented, blah, blah, blah, unless I'm asking you about that. Do you understand?"   Exhibit A, excerpts of transcript of Sept. 25, 2019 deposition of Jan Wissmuller ("Ex. A") at 132:10-14.

reasons for the changes in [Mr. Wissmuller's] deposition errata sheet . . . regarding whether a prior art reference contained the limitations of certain claims of the Asserted Patents";[3] and (2) "questions Mr. Wissmuller was improperly directed not to answer," as to the content of two privileged conversations between Mr. Wissmuller and his counsel.  Mot. at 1.  The Motion should be denied because the errata sheet is proper under Fed. R. Civ. P. 30(e)(1)(B) and reflects the reasons for each change on its face, and Mr. Wissmuller was never "improperly" directed not to answer <u>any</u> question at any point in the deposition.  In this jurisdiction, the attorney-client privilege attaches to a represented party's discussions with counsel during breaks in a deposition, particularly when no question is pending.  Roland cites no authority from the District of Rhode Island to support its effort to upend long-standing Rhode Island practice and established decisional law.  For all these reasons, and as set forth more fully below, Roland's Motion should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On January 10, 2017, inMusic sued Roland for infringement of the three patents-in-suit, U.S. Patent Nos. 9,424,827 (the "'827 patent"), 8,785,758 (the "'758 patent") and 8,039,724 (the "'724 patent") (the "Rhode Island Litigation").  Dkt. No. 1.

Mr. Wissmuller, now retired, served as the Vice President of Engineering at inMusic.  Ex. A at 5:17.  Mr. Wissmuller is a listed co-inventor of two of the patents-in-suit:  the '758 patent, which pertains to an electronic hi-hat cymbal controller, and the '724 patent, which pertains to a removable electronic drum head.  *See* Dkt. Nos. 33-2, 33-3.  Mr. Wissmuller is not an inventor on the third patent-in-suit, the '827 patent, which pertains to an electronic drum with an enhanced playing area.  *See* Dkt. No. 33-1.

---

[3] *See also* Mot. at 10 ("Roland should be permitted to depose Mr. Wissmuller regarding those changes and the relevant line of questioning.").

A.        **The Florida Litigation and the First Deposition**

On December 8, 2017, Roland took Mr. Wissmuller's deposition (the "First Deposition") in a co-pending case in the Southern District of Florida where Roland sued inMusic for patent infringement (the "Florida Litigation").  At the First Deposition, Roland's counsel[4] examined Mr. Wissmuller on two YouTube videos and another video.[5]

Mr. Wissmuller, represented by inMusic's counsel, answered all of Roland's counsel's questions, which included questions about two YouTube videos entitled, "DIY Optical Internal Hi-Hat Controller, Segment 1" and "DIY Optical Internal Hi-Hat Controller, Segment 2" (collectively, the "YouTube Video").  Exhibit B, excerpts of transcript of December 8, 2017 deposition of Jan Wissmuller ("Ex. B"), at 162:12–171:24.  Mr. Wissmuller testified that "I don't believe I have ever seen [the YouTube Video].  I saw something similar to it, but it was quite different -- quite a different design, and they actually got it largely done.  They could actually hook it up to a drum sound."  *Id.* at 170:15–19.  As to a third video, the following colloquy between Roland's counsel and Mr. Wissmuller ensued:

>    Q. Is there anything else you recall about that video you had seen?
>
>    A. No. It was a long time ago. Took a quick look at it, said, ***oh, that's cute***, and...
>
>    Q. Okay. You don't remember the website or anything?
>
>    A. (Shaking head.)
>
>    Q. That's a "no"?
>
>    A. No, I do not.

---

[4] Roland's *pro hac vice* counsel in this case is lead counsel in the Florida Litigation and has taken or defended every deposition in both cases.

[5] This portion of Mr. Wissmuller's deposition in the Florida Litigation concerned the '758 patent, one of the patents inMusic is asserting against Roland in the ***Rhode Island*** Litigation.  The First Deposition took place prior to the Rule 16 Conference in the Rhode Island Litigation.

*Id.* at 170:20–171:3 (emphasis added).

### B.    The Rhode Island Litigation and the Second Deposition

On September 25, 2019, Roland deposed Mr. Wissmuller[6] in the Rhode Island Litigation (the "Second Deposition").  The location Roland selected (the Hampton Inn) did not include break-out rooms, so deposition breaks required litigation counsel, inMusic's General Counsel, and the witness to take an elevator to the lobby to meet privately.  Those logistics—evident to Roland's counsel who selected the venue—extended the duration of certain breaks.

The deposition began at 9:07 a.m. and concluded at 3:09 p.m.  As is customary for a deposition of that duration, counsel for both parties agreed to take breaks during the deposition; two of those breaks are at issue in the Motion and discussed in greater detail below.  Roland did not suspend the deposition at the conclusion or seek Court intervention at any point.  *See* Ex. A at 194:10–19 (Roland's counsel: "No further questions.").

Throughout the morning session, Roland's counsel asked improper questions that called for legal conclusions, including asking a lay witness to interpret patent claim terms already construed by this Court.  *Compare* at 119:20–120:13 (asking Mr. Wissmuller whether he "see[s] anything in Figures 7 and 8 that has a lip configured and arranged to hook over an edge of the drum hoop") *with* Dkt. No. 71, Report and Recommendation, adopted with clarifications at Dkt. No. 84, at 12–13.  Mr. Wissmuller repeatedly testified that he lacked competence to answer these and similar questions:

> Q. Do you know what a position detector is?
>
> A. In common English, the phrase makes sense to me.  I'm not sure what the legal term is after it's been through all the discussions that may have been had when the patent was written.

---

[6] inMusic's counsel represented Mr. Wissmuller at deposition.

Q. Well, just in the context of the '758 patent.  That's what I'm asking about.  In the context of the '758 patent, do you know what a position detector is?

MR. SCOTT:  Objection to form.

A. Only generally.  Again, I'm a little worried about the legal details.  So I'm going to claim a certain level of incompetence in the way the legal aspect of that is defined.  So in a general engineering way, I have a feeling for what I would expect a position detector to do.  I don't know if that applies to what was written into the patent.

Ex. A at 31:17–32:9; *see also* Ex. A at 26:23–27:1, 27:4–7, 33:13–16, 35:17–21, 36:1–4, 39:16–18, 40:6–7, 40:12–13, 49:4–5, 50:12–13, 52:24–25, 53:4–7, 55:5–11, 56:19–24, 57:13–17, 64:4–8, 101:25–102:3, 118:4–5, 119:24–25, 120:5, 120:9–13, 121:3–5, 127:7–9, 133:25–134:6, 137:24–25, 144:4–5, 151:2–4, 161:1–7, 162:9–12, 162:22–163:9, 163:24–164:1, 164:10–13.

       1.    <u>Break No. 1</u>

The afternoon session of Mr. Wissmuller's deposition began at 1:14 p.m.  Ex. A at 122:3–5.

Roland's counsel asked additional questions about the patent prosecution process before the PTO

even though Mr. Wissmuller had earlier testified that he was not involved in the prosecution of the

'758 or '724 patents.  *Id.* at 60:14–61:6; 89:24–90:2; 122:7–10.

After fielding yet another question from Roland's counsel regarding an amendment

submitted to the PTO that he had never seen and about which he lacked personal knowledge, Mr.

Wissmuller again voiced his discomfort with answering such questions:

You're asking me to be very specific about specific words in the patent. And that's where I'm going to remind you every time that I'm not qualified to talk about the way the language has been defined in the discourse between the attorneys writing the patent and the patent office.

*Id.* at 133:25–134:6.  Roland's counsel responded, "I'm not asking you about your interpretation

about what attorneys tell the patent office, I'm just asking you about your interpretation."  *Id.* at

134:7–10.  Mr. Wissmuller began to answer, only to be cut off by Roland's counsel:

A.  You're selecting words—

Q.  Mr. Wissmuller—

A.  –individually.

Q.  –please let me finish the question.  Is there a reason why you
refuse to let me finish a question?

A.  Yeah.  You're taking a long time.  Let's go.

Q.  That's your answer?

A.  Uh-hmm.

Q.  I'm taking too long for you?  You're a very interesting person.

*Id.* at 134:11–22.

With counsel and the witness speaking over each other, tensions escalating, and no question

pending, inMusic's counsel stated, "We'll take a 5-minute break."  *Id.* at 134:23–135:1.  inMusic's

counsel stated that "[w]e're going to step out a few minutes.  And then we're going to come back

and we'll complete the deposition hopefully in a professional manner."  *Id.* at 135:14–17.  Roland's

counsel stated, "All right.  Let's go off the record."  *Id.* at 135:18–19.

The break lasted three minutes, at which point the deposition resumed.  *See id.* at 135:20–

136:3.  Roland's counsel improperly inquired about the substance of the discussion between Mr.

Wissmuller and his counsel during the three-minute break, and inMusic's counsel instructed Mr.

Wissmuller not to answer Roland's counsel's questions on the basis of privilege.  *See id.* at 136:5–

19.  Roland's counsel demanded that Mr. Wissmuller write down "the subject of [his] conversation"

with his counsel, which the witness declined to do based on the assertion of the attorney-client

privilege.  *See id.* at 136:20–137:10.

> 2.  Break No. 2

Roland's counsel asked Mr. Wissmuller whether he was familiar at any time with any prior

art to ***the '724 patent***.  Ex. A at 168:5–6.  Mr. Wissmuller testified:

> Okay. So we had a discussion in the prior deposition about YouTubes that showed people sort of monkeying around with the optical stuff.
>
> And while I did not remember the YouTube that you had at that deposition and found it confusing because it was familiar enough but didn't go to the end I was looking for, I did see in that period -- I don't know if it was a YouTube or what it was, but it was a video of somebody going -- and I don't remember really much in the way of the details about it. I thought, ***oh, that's cute***.

*Id.* at 168:11–22 (emphasis added); *compare* Ex. B at 170:22–23 ("It was a long time ago.  Took a quick look at it, said, oh that's cute . . . .").

Roland's counsel asked, "Did [the video] disclose an elastic strike layer [a drum head]?" consistent with the limitation of claim 1 of '724 patent requiring an elastic strike layer.  Ex. A at 169:15; Dkt. No. 33-3, '724 patent, at 5:3.  Mr. Wissmuller responded, "I don't recall. I don't recall what they were using for cymbals at all," evidencing that the witness misunderstood the question to be about the '758 patent (pertaining to an electronic hi-hat cymbal controller), not the '724 patent (pertaining to a removable electronic drum head).  Ex. A at 169:16–17.

> Q. Oh, so the prior art that you're talking about relates to the '758 patent?
>
> MR. SCOTT: He was asking about the '724.
>
> A. Oh, gosh. I'm so, so confused. I'm sorry. So '724, I have not seen anything about '724.

*Id.* at 169:18–23.

Roland's counsel then proceeded to ask Mr. Wissmuller to compare an unauthenticated and non-specific "video" to the elements of claim 1 of the '758 patent even after Mr. Wissmuller had repeatedly testified that he lacked competence to testify about the scope of the patent or the meaning of the claim terms.  *See* Mot. at 3; *see also, e.g.*, Ex. A at *see also* Ex. A at 26:23–27:1, 27:4–7, 31:18–21, 32:2–9; 33:13–16, 35:17–21, 36:1–4, 39:16–18, 40:6–7, 40:12–13, 49:4–5, 50:12–13, 52:24–25, 53:4–7, 55:5–11, 56:19–24, 57:13–17, 64:4–8, 101:25–102:3, 118:4–5,

119:24–25, 120:5, 120:9–13, 121:3–5, 127:7–9, 133:25–134:6, 137:24–25, 144:4–5, 151:2–4, 161:1–7, 162:9–12, 162:22–163:9, 163:24–164:1, 164:10–13.  After Roland's counsel finished his line of questioning, he called for a break:  "We've been going for a little over an hour or approximately an hour.  Can we take a break?"  inMusic's counsel agreed, and the witness, inMusic's General Counsel and litigation counsel took the elevator to the hotel lobby.  Ex. A at 175:9–12.

3.    The Direct and Re-Cross Examinations of Mr. Wissmuller

After the break, Roland's counsel stated that he had no further questions of the witness. inMusic's counsel proceeded to ask questions of Mr. Wissmuller, who testified consistently with his First Deposition regarding a video.  *See* Ex. A at 176:6–178:24; *cf.* Ex. B at 166:20–167:1, 170:15–171:7 (recalling, without much confidence, watching a video in 2009, 2010).

Roland's counsel then re-crossed the witness, asked and received answers to all his substantive questions about Mr. Wissmuller's testimony.[7]  For example, counsel asked about the exact testimony cited on page 9 of the Motion:

> Q. . . . So previously you recalled that the video did disclose that the signal generated by the foot pedal device is proportional to the position of the control shaft, but now you're changing your answer?
>
> A. On reflection, I'm concerned about the word "proportional."  I don't think so.
>
> Q. What did you see in the video?
>
> A. What did I see in the video?  Someone making a DIY, do-it-yourself, hi-hat controller in their workshop.  The body components I think were made out of PVC.  And they attached a lot of -- a lot of external wires.  So a lot of it was done with just the bottom cymbal in place.  And it went up to the point where you saw the shutter going up

---

[7] Upon counsel's instruction, Mr. Wissmuller did not answer Mr. de Gyarfas's improper questions that attempted to invade the attorney-client privilege.

8

and down and a signal changing as the signal went up and down.
Generally similar.  Not necessarily proportional.

Q. How do you know it was generally similar but not necessarily
proportional?

A. Up was up and down was down.  But how much -- whether there
was any mathematical functionality was something you couldn't
determine. . . .

Q. So you don't know one way or the other whether the signal was
proportional?

A. It is something that I would need to test and find out about.

Q. Well, if you could, just give me a simple answer to my question.
My question was, so you don't know one way or the other whether
the signal generated by the foot pedal control module is proportional
to the control shaft relative to the foot pedal control module.  Correct?

A. Uh-hmm.  Yes.

Ex. A at 180:17–184:7.

At 3:09 p.m., counsel for both parties stated they had no further questions.  *See id.* at

194:10–11.  Roland did not suspend the deposition.  *Id.*  Mr. Wissmuller reserved his right to read

and sign.  *Id.* at 194:11–12.

4.      The Witness and His Counsel Did Not Impede the Examination

Roland's factual recitation about "speaking objections," "baseless objections," and

"improper deposition conduct" are unsupported in the transcript.  Counsel's objections are largely

to the "form" of the question.  In one instance, Roland's counsel prompted inMusic's counsel to

explain the basis for the form objection, and then characterized that explanation – that he demanded

– as an improper speaking objections.  Ex. A at 36:14–37:1.

As to "speaking objections," Roland cites only two examples.  In the first example, Roland

cites just to the objection (*see* Mot. at 4, citing Ex. A at 11:7–9) and ignores the surrounding

testimony:

9

Q.  Did you contribute to the invention of the '758 patent?

A.  Yes.

Q.  What did you do in connection with the '758 patent?

A.  **Most of the invention that is discussed in the patent is my invention.**

Q.  Go ahead.

A.  **Probably all.**  "Yes" is probably the most accurate answer.

Q.  Is there any question in your mind as to whether somebody else contributed to this?

A.  No.

Q.  Your initial answer was, to what you did in connection with the '758 patent, you said "Most of the invention that is discussed in the patent is my invention."  Why did you say "most" instead of "all"?

MR. SCOTT:  Objection to form.  Incomplete recitation of his testimony.  He said most if not all.  You can answer.

MR. DE GYARFAS:  And let me just put on the record that counsel is making up incorrect statements once again.

Ex. A at 10:14–11:13 (emphasis added).  In the context of the questioning, counsel for the witness did nothing more than briefly and correctly re-state the witness's testimony; there was no interference with the testimony.

Roland's second example of an improper speaking objection fares no better.  *See* Mot. at 4 (citing *id.* at 189–90).  Counsel's inexplicable antagonism toward the witness played out in the form of argumentative questions.  *See, e.g.*, Ex. A at 188:25–189:2, 189:11–12.  inMusic's counsel cautioned Roland's counsel not to badger the witness.[8]  And while Mr. Wissmuller did briefly forget the pending question, counsel immediately reminded him of it, resulting in no "disrupt[ion

---

[8] Based on the deposition transcript, there is no reason to believe it was inMusic's counsel's objections, as opposed to Roland's counsel's interjections, that caused Mr. Wissmuller to lose track of the pending question.  *See* Ex. A at 189:15–16, 189:18–19, 189:21.

to] the flow" of the deposition.  *See id.* at 190:2–3; Mot. at 4.

Next, Roland asserts that "inMusic's counsel made baseless objections which disrupted the flow of the deposition."  Mot. at 4 (citing Ex. A at 37–40).  A review of those four pages reveal non-speaking "form" objections to improper questions to a lay witness about a patent's "disclosure."  The witness repeatedly testified he is not "competent" to testify about what the patent discloses (Ex. A at 38:8–11, 40:3–7), and that he is "not comfortable speaking to the legal language as to whether the attorney [who drafted the patent] thought that he covered other implementations here."  Ex. A at 39:5–18.  Although Roland's counsel stated he was not asking the witness legal questions, that was the import of questions about the scope/disclosure of the patent.

Third, Roland contends that "both inMusic's counsel and Mr. Wissmuller repeatedly interrupted counsel and refused to let him fully ask his questions."  Mot. at 4.  Roland offers 25 citations to the transcript.  *Id.*  None of the 25 citations contains a single word from inMusic's counsel.  They demonstrate that the examining attorney either stopped speaking or the witness anticipated the question, common issues that arise in nearly every deposition.  None of the examples reflects an impediment to examining counsel asking follow-up questions and receiving answers.  It is the job of every examining attorney to navigate issues that arise when the questioner and the deponent start talking over each other.

5.    The Errata Sheet

On October 17, 2019, within the 30-day period to submit an errata sheet as to both form and substance as allowed by Federal Rule 30(e)(1)(B), Mr. Wissmuller exercised his right and signed under oath an errata sheet that contained those clarifications about which he testified at deposition and Mr. de Gyarfas questioned him at deposition.  *See* Mot., Ex. 2.  At no point after the Second Deposition or receipt of the errata sheet did Roland issue any written discovery or seek testimony from any other witnesses for further information regarding the video Mr. Wissmuller twice testified

11

having seen.  On October 28, 2019, fact discovery closed.  *See* Sept. 11, 2019 Text Order.

**III.   ARGUMENT**

    **A.     Legal Standards**

        1.     <u>Rhode Island Law Does Not Prohibit Conferences Between a Witness and Counsel During the Deposition or Recesses</u>

Federal Rule of Civil Procedure 30(c)(2) states:

> An objection must be stated concisely in a nonargumentative and nonsuggestive manner.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

The Federal Rules of Civil Procedure do not directly address the extent to which a lawyer may confer with a client, off the record and outside earshot of the other lawyers, during a deposition of the client.  Rhode Island does not prohibit such communications.

Roland relies on a case from another jurisdiction that imposes an extreme prohibition against any conferences between witness and lawyer, both during the deposition and during recesses.  *See* Mot. at 4 (citing *Hall v. Clifton Precision*, 150 F.R.D. 525, 529 (E.D. Pa. 1993)).  No courts in the First Circuit have adopted the extreme approach set out in *Hall*.  In fact, the Superior Court of Massachusetts undertook a thorough and reasoned analysis of *Hall* and rejected it as an "untenable and impractical interference with the attorney-client privilege and right to counsel."  *Chesbrough v. Life Care Centers of Am., Inc.*, No. WOCV201201339A, 2014 WL 861200, at *5 (Sup. Ct. Mass. 2014).  Roland does not cite the *Chesbrough* case in its Motion.

*Hall* has come under considerable criticism beyond Massachusetts.  Other courts allow conferences between witness and lawyer "[s]o long as attorneys do not demand a break in the questions, or demand a conference between questions and answers."  *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998).  The *Stratosphere* court "decline[d] to adopt [the *Hall*

court's] strict requirements," stating that it would not preclude an attorney from "making sure that his or her client did not misunderstand or misinterpret questions or documents." *Id.*; *see also McKinley Infuser, Inc. v. Zdeb*, 200 F.R.D. 648, 650 (D. Colo. 2001) ("[T]he truth finding function is adequately protected if deponents are prohibited from conferring with their counsel while a question is pending; other consultations, during periodic deposition breaks, luncheon and overnight recesses, and more prolonged recesses ordinarily are appropriate.") (citing *In re Stratosphere*, 182 F.R.D. at 621); *West Virginia ex rel. Means v. King*, 205 W. Va. 708, 715 (W. Va. 1999) (finding that an attorney should be permitted to confer with his client during the course of a discovery deposition); *Haskell Co. v. Ga. Pac. Corp.*, 684 So. 2d 297, 298 (Fla. Dist. Ct. App. 1996) ("[T]here is no recognized exception to the privilege for a communication between an attorney and client which occurs during a break in deposition.").

    2.    <u>Rule 37 Sanctions Are Not Warranted Where the Opposing Party's Objection Is Substantially Justified</u>

As Roland acknowledges in its Motion, Rule 37(a)(5)(A) states that, even if a motion to compel is granted, a court "must not order" the payment of reasonable expenses if "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." *See* Mot. at 12–13; *see, e.g.*, *Soares v. Prospect CharterCARE SJHSRI, LLC*, No. 17-306-JJM-LDA, 2018 WL 3489589, at *2 (D.R.I. July 19, 2018) (denying movant's request for fees and costs). "The term 'substantially justified' does not mean 'justified to a high degree,' but only 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *Saalfrank v. Town of Alton*, No. 08–cv–46–JL, 2010 WL 839884, at *3 (D.N.H. Mar. 5, 2010).

On the other hand, if a motion to compel is denied, as it should be here, the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to

pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." *Id.* at *3 (finding motion to compel was not substantially justified, no other circumstances existed making the award of expenses unjust, and awarding sanctions of reasonable expenses incurred in opposing motion).

**B.      Roland's Motion Should Be Denied As to Questions Regarding Mr. Wissmuller's Errata Sheet**

1      Roland's Counsel Already Asked and Mr. Wissmuller Already Answered Questions About the Subject Testimony

After Roland had concluded its initial examination, inMusic asked follow-up questions to Mr. Wissmuller of his earlier testimony that was inconsistent with both Mr. Wissmuller's testimony during the First Deposition and his repeated protestations during the Second Deposition that he lacked both comfort and competence to testify about patent claim language.  Thereafter, Roland's counsel spent seven minutes asking primarily about one particular aspect of Mr. Wissmuller's testimony.  *See* supra Section 0.0.3.  At the end of this series of questions, Roland's counsel stated, without equivocation, "I don't have any further questions."  Ex. A at 185:11–12.  inMusic's counsel then proceeded to examine Mr. Wissmuller again, after which Roland's counsel examined Mr. Wissmuller for a third time.  *See id.* at 187:6–194:10.  Again, at the end of this third examination, Roland's counsel stated, "No further questions."  *Id.* at 194:10.

In its Motion, Roland focuses on one instance in which Mr. Wissmuller clarified his testimony with respect to the contents of a decades old, unauthenticated video.  *See* Mot. at 9.  That very change is noted on Mr. Wissmuller's errata sheet and identifies the same answer already reflected in Mr. Wissmuller's testimony.  *See* Mot., Ex. 2 at 4.

| Initial Testimony | Clarified Testimony Subject of Re-Cross by Roland's Counsel | Errata Sheet |
|---|---|---|
| Q. Did this video disclose that an electrical signal generated | Q. And did that video disclose or show electrical signals | 172:9<br>Change: No |

14

| by this foot pedal device is proportional to the position of the control shaft? A. Uh-hmm. (Ex. A at 172:6–9) | proportional to the position of the control shaft relative to the foot pedal control module? A. No. (Ex. A at 178:17–21) | Reason: Mis-spoke |
|---|---|---|
| Q. Relative to the foot pedal control module? A. Yes. (Ex. A at 172:10–11) |  | 172:11 Change: No Reason: Mis-spoke |

Therefore, any failure to ask Mr. Wissmuller additional questions is only attributable to Roland, as it stated at the close of both the second and third periods of examination of Mr. Wissmuller that it had "no further questions."  Ex. A at 185:11–12; 194:10.

### C. Roland's Motion Should Be Denied As to Questions Regarding Conversations Between Mr. Wissmuller and His Counsel During Breaks as They Are Privileged

As detailed above, neither of the two breaks occurred "unilaterally."  Upon returning from both Breaks, inMusic's counsel properly objected to Roland's counsel's questions asking about the content of those conversations and instructed Mr. Wissmuller not to answer, as permitted by Rule 30(c)(2).  Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege . . . .").  Therefore, the Motion should be denied as to any questions regarding any conversation between Mr. Wissmuller and inMusic's counsel, as those exchanges are not discoverable because they are protected by attorney-client privilege.  *See In re Flonase Antitrust Litig.*, 723 F. Supp. 2d 761, 764 (E.D. Pa. 2010) (holding that conversations between deponent and counsel at recesses during her deposition were protected by the attorney-client privilege); *see also In re Stratosphere,* 182 F.R.D. at 622; *Chesbrough*, 2014 WL 861200, at *9.

#### 1.    Roland's Case Law Is Inapposite

As explained above, *Hall* and the blanket prohibition against any conferences between witness and lawyer, both during the deposition and during recesses, is not the law of or the practice

in this District, and that line of reasoning has been rejected by courts in Massachusetts. Roland cites case law from this Circuit that does not directly address the propriety of conferences between witness and lawyer, so it is inapposite on these facts. *See Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 40 (D. Mass. 2001) (citing *Hall* in support of proposition that lawyer should not "interpret" questions for witness); *Soares*, 2018 WL 3489589, at *1–2 (not addressing propriety of witness-lawyer conferences during deposition or recess); *Kelvey v. Coughlin*, 625 A.2d 775, 775–77 (R.I. 1993) (propriety of instructions not to answer on the basis of privilege); *United States v. Kattar*, 191 F.R.D. 33, 37–39 (D.N.H. 1999) (same); *In re Amezaga*, 195 B.R. 221, 226–27 (D.P.R. 1996) (same); *Phinney v. Paulshock*, 181 F.R.D. 185, 196 (D.N.H. 1998) (witness was not lawyer's client and thus attorney-client privilege did not apply).[9]

Moreover, even the case law Roland cites from outside this Circuit does not support prohibiting witness-lawyer conferences in every instance. *See, e.g.*, *New Age Imports, Inc. v. VD Importers, Inc.*, No. SACV 17-02154-CJC-KES, 2019 WL 1427468, at *3 (C.D. Cal. Feb. 21, 2019) ("Plaintiff's counsel had no grounds to broadly inquire as to everything and anything [Defendant company's co-owner] may have discussed with her attorney [during the break], and Defendants' counsel properly asserted attorney-client privilege.").

### 2. inMusic's Counsel Properly Instructed the Witness Not to Answer Roland's Counsel's Questions on the Basis of Attorney-Client Privilege

Since the parties took the Breaks with the agreement of counsel, the conversations between Mr. Wissmuller and his counsel transpired during those Breaks, and this District does not prohibit witness-lawyer conferences during depositions or recesses, attorney-client privilege applies to those conversations.

---

[9] Roland's case law similarly fails to provide any support from this District or Circuit for the propriety of Roland's request of Mr. Wissmuller to write down the content of the conversations between him and counsel for inMusic.

The facts in this case are similar to those in *Odone v. Croda Int'l PLC*, 170 F.R.D. 66, 66 (D.D.C. 1997), which also concerns a dispute over a conversation between a deponent and his attorney during a deposition recess.  Prior to the break, the questioning attorney asked the deponent about a patent to which he sought to be named sole or joint inventor.  *Id.*  The questioning attorney then called a recess, during which the deponent and his attorney consulted.  *Id.*  The *Odone* court, rejecting *Hall*, found that an attorney should not be penalized for a break "that he did not request to learn whether his client misunderstood or misinterpreted the questions and then for attempting to rehabilitate his client on the record."  *Id.* at 69.  The court further emphasized that the questioning counsel "had an opportunity, without requesting privileged attorney-client information, to redirect on the questions earlier asked for which the [questioning attorney] argues that the [deponent]'s response took a '180-degree turn', but the [questioning attorney] did not seize that opportunity."  *Id.*

Similarly, Break No. 2 occurred after ***Roland's counsel*** requested a recess.  *See* Ex. A at 175:9–12.  In other words, neither inMusic's counsel nor Mr. Wissmuller interrupted Roland's counsel's line of questioning; Roland's counsel initiated the break.  *Id.*  Indeed, Roland's counsel even stated immediately after the deposition reconvened that he did not have any more questions. *See id.* at 175:22–24.  inMusic's counsel took the opportunity to elicit whether Mr. Wissmuller misunderstood or misinterpreted the questions, especially given the fact that Mr. Wissmuller had testified in a contrary manner in his 2017 deposition.

### D.     Roland's Motion for Sanctions Should Be Denied

Not only should the Court deny Roland's Motion to Compel, but this Court should also reject Roland's Motion for Sanctions, as counsel's objections during the Second Deposition and instructions to Mr. Wissmuller not to answer were substantially justified.  inMusic's counsel's proper defense of its client in accordance with the Federal Rules of Civil Procedure should not give rise to an award of sanctions.  The inapposite caselaw Roland cites and its failure to elicit during

17

Mr. Wissmuller's deposition the testimony it now belatedly seeks do not dictate a different result.

        1.    <u>Neither Mr. Wissmuller nor inMusic's Counsel Improperly Impeded</u>
              <u>Questioning by Roland's Counsel</u>

Roland spends a significant portion of its Motion arguing that inMusic's counsel and Mr. Wissmuller prevented Roland's counsel from "fully pursuing his line of questioning and fully exploring Mr. Wissmuller's understanding of the prior art, thus preventing the deposition from being completed." *See* Mot. at 4, 10–12. However, the litany of accusations Roland launches are ultimately irrelevant to the testimony it seeks this Court to compel—namely, additional testimony regarding (1) the reasons for the changes in Mr. Wissmuller's deposition errata sheet and (2) the content of two privileged conversations between Mr. Wissmuller and his counsel.

First, Roland accuses Mr. Wissmuller of having interrupted Roland's counsel various times during counsel's questioning. *See id.* at 4. However, Roland's counsel was able to continue his questioning despite the alleged interruptions and was not impeded from clarifying the record in any way. Indeed, at least one of these instances Roland cites shows ***Roland's counsel*** interrupted Mr. Wissmuller. *See* Ex. A at 33:5–25 (emphasis added):

> Q. It reads, "The foot pedal control module 106 includes a position detector which senses the position of the upper cymbal 102 relative to the foot pedal control module 106." Do you see that?
>
> A. Yes.
>
> Q. Do you believe that's an accurate statement?
>
> A. I can't really -- I'm not really sure of the way that is being phrased. And again, there's information that I don't have context, so I'm a little uncomfortable.
>
> Q. But in your mind, a position detector should detect the position between the upper cymbal and the lower cymbal?
>
> **A. And the lower cymbal. Yeah. And I --**
>
> **Q. It's kind of --**

18

A. The foot pedal controller is sitting on the lower cymbal. So I might have guessed that this would be right, but I'm not sure to speak to that.[10]

Roland further accuses inMusic's counsel of having interrupted Roland's counsel, citing two examples.  Mot. at 10.  The deposition transcript plainly shows that there was no question pending in the first example.  *See* Ex. A at 134:21–24.  The second, reproduced on p. 11 of the Motion, also shows that, despite Roland's complaint that Mr. Wissmuller briefly lost track of the pending question, Roland's counsel immediately followed up by reminding the witness.  *See id.* at 189:23–190:3.

Roland also points out that inMusic's counsel "objected nearly 120 times."  Mot. at 10.  Proper objections stated "concisely in a nonargumentative and nonsuggestive manner" in response to improper or poorly worded questions are not capped at a specific number.  Fed. R. Civ. P. 30(c)(2).  They are a function of the questions asked.  For example, in the portion of the transcript Roland quotes on p. 11 of its Motion, Roland's counsel asked Mr. Wissmuller, in response to a perceived change in one of Mr. Wissmuller's answers, "So then why did you say no the first time I asked you that question?" to which inMusic's counsel gave a two-word objection:  "Objection. Argumentative."  Ex. A at 188:25–189:2.[11]

2.      Roland Did Not Suspend and Agreed to Conclude Mr. Wissmuller's Deposition

Contrary to Roland's counsel's representations to the Court during the November 7 conference, Roland did not suspend Mr. Wissmuller's deposition.  Ex. A at 194:10–11.  Roland has suspended other depositions, so it clearly understands the import of that mechanism.  *See* Exhibit C

---

[10] Roland's counsel interrupted Mr. Wissmuller on no fewer than 5 additional occasions.  *See* Ex. A at 75:15–20; 111:23–112:1; 129:10–13; 171:19–21; 188:7–12.

[11] inMusic's counsel's objections were consistent with the guidance provided by Rhode Island courts, including this Court.  *See, e.g.*, *Soares*, 2018 WL 3489589, at *1 ("Counsel shall refrain from cuing the deponent by objecting in any manner other than stating an objection for the record followed by a word or two describing the legal basis for the objection."); *Kelvey*, 625 A.2d at 775 (same).

at 232:11–14, excerpts of transcript of October 23, 2019 deposition of inMusic taken by Roland's counsel.  Therefore, Roland's own conduct demonstrates that it did not have any additional questions for Mr. Wissmuller and that it considered his deposition to have concluded.

## IV.    CONCLUSION

For the foregoing reasons, inMusic respectfully requests the Court deny the Motion and award inMusic its reasonable expenses incurred in opposing the Motion.  Fed. R. Civ. P. 37(a)(5)(B) (fees to non-movant appropriate unless the "motion was substantially justified or other circumstances make an award of expenses unjust.").

Respectfully submitted,

INMUSIC BRANDS, INC.
By its Attorneys,

/s/ Craig M. Scott
Craig M. Scott (#4237)
Christine K. Bush (#5587)
Adam M. Ramos (#7591)
Hinckley, Allen & Snyder LLP
100 Westminster Street
Suite 1500
Providence, RI  02903-2319
(401) 274-2000 Phone / (401) 277-9600 Fax
cscott@hinckleyallen.com
cbush@hinckleyallen.com
aramos@hinckleyallen.com

Laurel M. Gilbert, Esq. (*Pro Hac Vice*)
*lgilbert@hinckleyallen.com*
Gina K. Kim, Esq. (*Pro Hac Vice*)
*gkim@hinckleyallen.com*
28 State Street
Boston, MA  02109
(617) 345-9000 Phone / (617) 345-9020 Fax

Dated:  November 26, 2019

20

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed through the ECF system on November 26, 2019 and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

*/s/ Craig M. Scott*