bUNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| INMUSIC BRANDS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROLAND CORPORATION, <br><br> Defendant. | Civil Action No. 1:17-cv-00010-MSM-LDA |

**PLAINTIFF'S OPPOSITION TO ROLAND CORPORATION'S MOTION TO STRIKE DEPOSITION ERRATA SHEET OF JAN WISSMULLER**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ii

FACTUAL BACKGROUND ..........................................................................................................1

ARGUMENT ...................................................................................................................................5

    I.    The Court Should Not Strike Mr. Wissmuller's Errata Sheet, Which Complies with the Federal Rules of Civil Procedure and Precedent. ........................................................5

    II.    The Court Should Not Reopen the Wissmuller Deposition Because the Changes Did Not Render the Deposition Incomplete or Useless Without Further Testimony. .............9

    III.    Mr. Wissmuller's Pre-Errata Testimony May Be Used at Trial Only for Impeachment Purposes, in the Absence of Other Circumstances Allowing the Use of His Deposition Testimony for Any Purpose under Fed. R. Civ. P. 32. ......................12

CONCLUSION ..............................................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                              **Page**

*Bennett v. Kent Cnty. Mem. Hosp.*,
   C.A. No. 07-163ML, 2009 WL 101851 (D.R.I. Jan. 14, 2009) .............................................passim

*Crowe v. Marchand*
   C.A. No. 05-98T, 2006 WL 5230014 (D.R.I. Aug. 17, 2006) ....................................................... 6, 8

*Glenwood Farms, Inc. v. Ivey*,
   229 F.R.D. 34 (D. Me. 2005) ................................................................................................................. 5

*Greenway v. International Paper Co.*,
   144 F.R.D. 322 (W.D. La. 1992) ........................................................................................................ 5, 6

*Herring v. Teradyne, Inc.*,
   No. Civ. 01CV1835-L(JFS), 2002 WL 32068318, (S.D. Cal. Nov. 4, 2002) ................................ 13

*Liberty/Sanibel v. Gettys Grp., Inc.*,
   No. 2:06-cv-16-FtM-29SPC, 2007 WL 9718528 (M.D. Fla. Feb. 28, 2007) ................................ 13

*Lutig v. Thomas*, 89 F.R.D.
   639 (N.D. Ill. Apr. 2, 1981) ................................................................................................................. 13

*Metayer v. PFL Life Ins. Co.*,
   No. Civ. 98-177-P-C, 1999 WL 33117063 (D. Me. July 15, 1999) ............................................... 12

*Pina v. Children's Place*
   740 F.3d 785 (1st Cir. 2014) ............................................................................................................ 6, 12

*Reilly v. TXU Corp.*
   230 F.R.D. 486 (N.D. Tex. 2005) ..................................................................................................... 7, 8

*Sanford v. CBS, Inc.*,
   594 F. Supp. 713 (N.D. Ill. 1984) ......................................................................................................... 9

*TG Plastics Trading, Co. v. Toray Plastics (Am.), Inc.*,
   C.A. No. 09-336M, 2013 WL 322121 (D.R.I. Jan. 28, 2013) ............................................. 6, 7, 8, 9

*Tingley Sys., Inc. v. CSC Consulting, Inc.*
   152 F. Supp. 2d 95 (D. Mass. 2001) ............................................................................................... 9, 12

**Rules**

Fed. R. Civ. P. 30(e) ................................................................................................................... passim

Fed. R. Civ. P. 32 ................................................................................................................................ 12

Fed. R. Civ. P. 37(a)(5)(B) ................................................................................................................ 13

Fed. R. Civ. P. 30(e) permits errata sheet corrections to the form and substance of deposition testimony. The First Circuit and this Court both have rejected the narrow application of Rule 30(e) that Defendant Roland Corporation ("Roland") advances in its Motion to Strike Deposition Errata Sheet of Jan Wissmuller (the "Motion to Strike"). Ignoring that precedent, Roland argues that the Court should strike timely and proper errata sheet changes that are consistent with Mr. Wissmuller's testimony in this case and in a second case involving inMusic and Roland pending in Florida. Roland's Motion to Strike should be denied because Roland fails to show that the errata sheet exceeds the scope of Rule 30(e) as interpreted by this Court and the First Circuit.

In the alternative, Roland seeks to re-open Mr. Wissmuller's deposition. As inMusic explained in its opposition to Roland's Motion to Compel Further Deposition Testimony by Jan Wissmuller and for Sanctions (the "Motion to Compel"), Roland had a full opportunity to question Mr. Wissmuller on the issues it now claims necessitate follow-up questions. The errata sheet changes do not support another deposition on these issues, and the Court should deny Roland's request to reopen Mr. Wissmuller's deposition.

## FACTUAL BACKGROUND

As Roland's Motion to Strike significantly overlaps with the facts and issues raised in Roland's Motion to Compel, inMusic incorporates herein the factual and procedural background set forth in its opposition to Roland's Motion to Compel.

On December 8, 2017, Roland took the deposition of Mr. Wissmuller, inMusic's former Vice President of Engineering and a named inventor on two of the patents at issue in this litigation (the "First Deposition"), in a patent infringement case pending in the Southern District of Florida between Roland and inMusic (the "Florida Litigation").[1] During that deposition, Roland's counsel

---

[1] In the Florida Litigation, Roland has accused inMusic of infringing certain of Roland's patents. The patents-in-suit in this litigation are not part of the Florida Litigation.

played Mr. Wissmuller a particular YouTube video and asked Mr. Wissmuller whether he had ever seen it. *See* Exhibit A, excerpts of the deposition of Jan Wissmuller, December 8, 2017, *Roland Corporation v. inMusic Brands, Inc.* (Case No. 1:17-cv-22405-FAM), at 163:12-166:16. Mr. Wissmuller testified that he had not seen that video, but had seen "a video of somebody doing something similar, but this is not it." *Id.* at 166:17-19. The deposition then proceeded as follows:

> Q. Do you recall when you saw the other video, someone doing something similar?
>
> A. Boy, that's hard. 2009, 2010, you know, in that window.
>
> Q. Are you pretty confident about those dates?
>
> …
>
> A. No.
>
> Q. Do you know how you could be confident about the dates?
>
> A. With the materials at hand, I don't think so.

*Id.* at 166:20-167:5.

Roland's counsel then played Mr. Wissmuller a second YouTube video, which Mr. Wissmuller again testified he had not seen. *See id.* at 167:16-170:15. Mr. Wissmuller again testified that he "saw something similar to it, but it was quite a different -- quite a different design, and they actually got it largely done. They could actually hook it up to a drum sound." *Id.* at 170:15-19. When asked if there was anything else he recalled about the video he had seen, Mr. Wissmuller responded: "No. It was a long time ago. Took a quick look at it, said, oh, that's cute, and …" *Id.* at 170:20-23. Mr. Wissmuller further testified that he could not remember the website where he saw the video or think of any way to resurrect that website in his mind. *See id.* at 170:24-171:7.

On September 25, 2019, Roland deposed Mr. Wissmuller in this litigation (the "Second Deposition"). Roland's counsel asked Mr. Wissmuller whether he was familiar with any prior art to the '724 patent, the patent-in-suit relating to a removable electronic drum head. *See* Exhibit B, excerpts of the deposition of Jan Wissmuller, September 25, 2019, at 167:20-168:10. Mr. Wissmuller testified that, while he did not remember the YouTube videos Roland's counsel showed him during the First Deposition, "I did see in that period -- I don't know if it was a YouTube or what it was, but it was a video of somebody going – and I don't really remember much in the way of the details about it. I thought, oh, that's cute." *Id.* at 168:14-22. When Roland's counsel asked Mr. Wissmuller if he remembered anything else about the video, Mr. Wissmuller described a video with "a hi-hat cymbal and a hi-hat stand and somebody was running it through a drum synthesizer and showing that it worked, although they were playing it very gently." *Id.* at 168:23-169:10.

Mr. Wissmuller then realized his confusion, i.e. that Roland's counsel had asked about prior art to the '724 patent, not the '758 patent relating to an electronic hi-hat cymbal controller:

Q. Oh, so the prior art that you're talking about relates to the '758 patent?

[inMusic's counsel]: He was asking about the '724.

A. Oh gosh, I'm so, so confused. I'm sorry. So '724, I have not seen anything about '724.

*Id.* at 169:11-23. Mr. Wissmuller clarified that he was talking about a video about a hi-hat cymbal controller, which had "issues with it that hadn't been resolved," including false readings created when the cymbal was hit hard. *See id.* at 170:2-21. Roland's counsel then asked Mr. Wissmuller to compare an unauthenticated and non-specific "video" to the elements of claim 1 of the '758 patent, even after Mr. Wissmuller had repeatedly testified that he lacked competence to testify about the scope of the patent or the meaning of the claim terms. *See id.* at 171:5-172:11, 173:21-174:16.

3

After Roland's counsel requested a break, *see id.* at 175:9-17, inMusic's counsel asked Mr. Wissmuller questions about the video. Mr. Wissmuller testified that he had no certainty as to when he saw the video, and did not have accurate enough memory to know whether he saw the video before or after he and inMusic started work on the invention claimed in the '758 patent. *See id.* at 176:23-177:15. Mr. Wissmuller testified that whatever video he did recall did not show a body portion configured to be supported by a hi-hat cymbal stand or electronic signals proportional to the position of the control shaft relative to the foot pedal control module. *See id.* at 177:16-178:24.

Roland's counsel then asked Mr. Wissmuller numerous pointed follow up questions concerning the testimony just elicited by inMusic's counsel. *See id.* at 179:13-180:21.[2] Mr. Wissmuller explained that, upon reflection, he was "concerned about the word 'proportional.'" *Id.* at 180:22-23. Mr. Wissmuller further explained that the video showed "the shutter going up and down and a signal changing as the signal went up and down. Generally similar. Not necessarily proportional." *Id.* at 181:6-9. When pressed as to why the signal in the video was not necessarily proportional, Mr. Wissmuller explained: "Up was up and down was down. But how much – whether there was any mathematical functionality was something you couldn't determine." *Id.* at 181:10-15. Mr. Wissmuller then provided a detailed explanation of his understanding of the meaning of the term "proportional" in the '758 patent. *See id.* at 181:16-183:9.

Roland's counsel then asked Mr. Wissmuller whether there was "anything in the video that led you to believe that the signal was not proportional." *Id.* at 183:17-19. Mr. Wissmuller answered that he "couldn't draw a conclusion," and it was "something that I would need to test and find out about." *Id.* at 183:20-24.

---

[2] Roland omits this portion of Mr. Wissmuller's deposition from the excerpts attached to its motion. *See* Dkt. No. 92-2.

4

On October 17, 2019, within 30 days of receipt of the transcript of the Second Deposition, inMusic served Mr. Wissmuller's errata sheet (the "Errata") on Roland. *See* Dkt. No. 92-3.

## ARGUMENT

### I. The Court Should Not Strike Mr. Wissmuller's Errata Sheet, Which Complies with the Federal Rules of Civil Procedure and Precedent.

Roland first argues that the Court should strike the Errata because Mr. Wissmuller allegedly made changes "for tactical reasons." Mot. at 5-7. Roland's argument ignores well-established law in this District and the First Circuit permitting substantive changes to deposition testimony via an errata sheet.

Rule 30(e) provides:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer the transcript or recording is available in which . . . to review the transcript or recording; and . . . if there are changes ***in form or substance***, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(e) (emphasis added). This Court has rejected the line of cases that limits use of an errata sheet to correcting typographical errors. As the Court has explained, "[a]lthough some courts have followed *Greenway*,[3] . . . the majority have not and have held that Rule 30(e) expressly allows changes in both 'form or substance.'" *Bennett v. Kent Cnty. Mem. Hosp.*, C.A. No. 07-163ML, 2009 WL 101851, at *1 (D.R.I. Jan. 14, 2009) (citing, *inter alia*, *Glenwood Farms, Inc. v. Ivey*, 229 F.R.D. 34, 35 (D. Me. 2005) ("A substantial body of case law holds that, so long as the deponent gives reasons for changes or additions to his deposition testimony under the terms of Rule 30(e) and the original testimony remains in the transcript, no action by the court is indicated.")); *see also TG Plastics Trading, Co. v. Toray Plastics (Am.), Inc.*, C.A. No. 09-336M, 2013 WL 322121,

---

[3] *Greenway v. International Paper Co.*, 144 F.R.D. 322 (W.D. La. 1992). In *Greenway*, the court held that Rule 30(e) permits corrections to a reporter's substantive errors only, not a deponent's substantive errors. *See Greenway*, 144 F.R.D. at 325.

at *1 (D.R.I. Jan. 28, 2013) ("Although Defendant is careful not to cite to *Greenway* . . ., since it has previously been rejected by this Court, its argument largely parallels the rationale in *Greenway*."); *Berdnt v. Synder*, Civil No. 13-cv-368-SM, 2014 WL 6977848, at *6 n. 10 (D.N.H. Dec. 9, 2014) ("The narrow approach has been rejected by several district courts in this circuit, and the court does not find *Greenway* persuasive."). The First Circuit has agreed with this Court. *Pina v. Children's Place*, 740 F.3d 785, 792 (1st Cir. 2014) ("Rule 30(e) does not limit a party to the correction of stenographic errors; it permits changes 'in form *or substance*.'") (quoting Fed. R. Civ. P. 30(e)).

Roland attempts to sidestep this Court and the First Circuit's clear authorization of procedurally proper errata sheet changes to the substance of a deponent's testimony by pointing to *Crowe v. Marchand* for the proposition that "the purpose of an errata sheet is to *correct alleged inaccuracies* in what the deponent *said* at his deposition, not to modify what the deponent said for tactical reasons or to reflect what he wishes that he had said." *Crowe v. Marchand*, C.A. No. 05-98T, 2006 WL 5230014, at *1 (D.R.I. Aug. 17, 2006). However, as the Court noted in *Toray Plastics*, the Court's decision in *Crowe* to strike an expert's errata sheet was "based primarily on procedural deficiencies," namely that the errata was untimely and did not include the deponent's reasons for his changes. *Toray Plastics*, 2013 WL 322121, at *2.

As to the finding in *Crowe* that the deponent made changes for improper "tactical reasons," the Court in *Toray Plastics* explained:

> Shortly after the expert's deposition, the defendants moved in limine to preclude plaintiff's expert from offering any opinions at trial which he characterized as "guesstimates" and were not held by him to a reasonable degree of medical certainty as required by Rhode Island law. Thereafter, the expert signed an errata sheet which included several requests to change his use of the word "guesstimate" to the phrase "clinical approximation based on a reasonable degree of medical certainty." As accurately noted by Judge Torres, this was a blatant attempt to change a deponent's testimony for "tactical reasons," and striking the errata sheet was warranted.

6

*Id.* (internal citations omitted). The *Toray* Court then denied the defendant's motion to strike the plaintiff's expert's errata sheet because the expert's "errata sheet meets the procedural requirements of Rule 30(e) and is not a tactical attempt to rewrite his deposition testimony to address a legal deficiency." *Id.* The Court further explained, "[a]lthough [the expert] seeks to contradict or substantially revise several of his original responses, there is no basis to conclude that the changes were made in bad faith or otherwise in violation of Rule 30(e)." *Id.*

Similarly, in *Bennett*, this Court denied the defendants' motion to strike a deponent's errata sheet as to all changes except one. *See Bennett*, 2009 WL 101851, at *2-*3. The Court again distinguished the deponent's errata sheet from the errata sheet in *Crowe*, noting an absence of bad faith on the part of the deponent and that the line of questioning at issue was confusing. *See id.* at *2. The Court further noted that the deponent "provide[d] legitimate reasons for his proposed changes . . . and thus they also comply with Rule 30(e)." *Id.* However, as to a single change on the errata sheet as to which the deponent failed to provide a reason for the change as required by Rule 30(e), the Court granted the motion to strike. *Id.*

Here, as in *Toray Plastics* and *Bennett*, the Errata does not suffer from any procedural deficiencies. Mr. Wissmuller submitted the Errata to Roland within the 30-day period provided by Rule 30(e), and each change is properly supported by a reason for the change. *See* Dkt. No. 92-3. Notably, although Roland argues that Mr. Wissmuller's reasons for his changes, that he misspoke, "also indicate that the changes were made for tactical reasons," Mot. at 9, several courts including this Court have expressly approved of correcting a misstatement as a legitimate reason to correct deposition testimony. *See, e.g.*, *Reilly v. TXU Corp.*, 230 F.R.D. 486, 490 (N.D. Tex. 2005) ("As written, the Rule makes provision for changes in substance that are made for legitimate reasons, *such as to correct a misstatement* or honest mistake.") (emphasis added); *Toray Plastics*, 2013

7

WL 322121, at *2 (quoting *Reilly* with approval); *Bennett*, 2009 WL 101851, at *2 (same).[4]

Nor do the circumstances surrounding the Errata indicate that Mr. Wissmuller made the changes in bad faith or otherwise in violation of Rule 30(e). None of the troublesome facts present in *Crowe* is present here. As the Court explained in *Bennett*, in *Crowe*, the errata sheet came only after the defendants moved to preclude the plaintiff's expert from offering any opinions at trial that he characterized during deposition as "guesstimates," rather than held to a reasonable degree of medical certainty, as require by Rhode Island law. *See Bennett*, 2008 WL 101851, at *2. The errata sheet changes sought to change the expert's use of the word "guesstimate" to the phrase "clinical approximation based on a reasonable degree of medical certainty." *Id.* (internal quotation marks and citation omitted). Notably, despite requesting to read and sign his deposition transcript, the expert in *Crowe* failed to identify any necessary changes to his deposition testimony until the defendant filed its motion, well after the 30-day period. Thus, the Court concluded that the plaintiff issued the untimely errata sheet changes in "a blatant attempt to change a deponent's testimony for 'tactical reasons,'" *id.*, i.e. to avoid the defendant's motion *in limine*. *See id.* In contrast, here, inMusic properly served it in the ordinary course within 30 days of receipt of the transcript of the Second Deposition, pursuant to Rule 30(e).

Further, although Roland spends several pages of its Motion explaining how the changes are favorable to inMusic's litigation position and unfavorable to Roland's invalidity defense, Roland identifies no evidence of bad faith. Putting aside Roland's hyperbolic arguments that Mr. Wissmuller's original testimony was "devastating to inMusic's claim," Roland essentially

---

[4] Roland also argues that Mr. Wissmuller was not confused by Roland's line of questioning. *See* Mot. at 8-9. Although the fact that Mr. Wissmuller did express confusion during the line of questioning at issue, *see, e.g.*, Exhibit B at 169:21-23, 176:4-22, suggests that Mr. Wissmuller made the changes at issue in good faith, witness confusion is not the only acceptable reason for a substantive change. As discussed *supra*, the witness having misspoke is reason enough to justify a change.

argues that because the changes are favorable to inMusic and unfavorable to Roland, they were necessarily made for "tactical reasons" that violate Rule 30(e). However, the deponent's changes benefitted the non-moving party in both *Toray Plastics* and *Bennett*. *See Bennett*, 2009 WL 101851, at *2 (in medical malpractice action, material witness changed answer as to whether defendants could have done something more to treat or examine the decedent from "no, sir" to "yes, sir"); *Toray Plastics*, 2013 WL 322121, at *2-*3 (plaintiff's expert's errata changes bolstered expert's opinions). In neither case did the Court find that just because changes benefited the non-moving party, that is tantamount to evidence of bad faith or impropriety; Roland identified no cases finding bad faith or a violation of Rule 30(e) in such circumstances.

As the Errata is procedurally proper, timely, and absent of any indicia of bad faith or tactical avoidance of a pending motion or legal argument, the Court should deny Roland's Motion to Strike.

## II. The Court Should Not Reopen the Wissmuller Deposition Because the Changes Did Not Render the Deposition Incomplete or Useless Without Further Testimony.

Roland argues, in the alternative, that the Court should re-open the Wissmuller deposition to allow Roland "to investigate the reasons for the changed answers and where the changes originated." Mot. at 10 (citing *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 121 (D. Mass. 2001)). "The standard to reopen a deposition is whether the changes contained in the errata sheets 'make the deposition incomplete or useless without further testimony.'" *Tingley*, 152 F. Supp. at 120 (quoting *Sanford v. CBS, Inc.*, 594 F. Supp. 713, 715 (N.D. Ill. 1984)). Roland argues that the changes render the Second Deposition incomplete because Mr. Wissmuller answered in the affirmative as to whether an unspecified video disclosed certain limitations in claim 1 of the '758 patent, and "[h]ad Mr. Wissmuller answered in the negative to those same questions, Roland's counsel would have asked follow-up questions." Mot. at 10. According to Roland, had

9

Mr. Wissmuller done so, "Roland's counsel would have asked why Mr. Wissmuller believes a certain limitation was not disclosed, or whether there was another structure that performed the same function." *Id.*

Roland's argument ignores that Roland had the opportunity to ask such follow-up questions, and *did in fact ask* such questions. As set forth in inMusic's opposition to the Motion to Compel, Roland identifies two instances where the Errata changes an affirmative answer to a negative answer. *See* Dkt. No. 92-3 at 5 (changing "uh-hmm" at 172:9 and "yes" at 172:11 to "no"). Both changes relate to whether the video disclosed an electrical signal proportional to the position of the control shaft relative to the foot pedal control module. These changes reflect the same answer Mr. Wissmuller gave during the Second Deposition when he clarified his earlier testimony:

| Initial Testimony | Clarified Testimony Subject of Re-Cross by Roland's Counsel | Errata Sheet |
|---|---|---|
| Q. Did this video disclose that an electrical signal generated by this foot pedal device is proportional to the position of the control shaft?<br>A. Uh-hmm.<br>(Ex. **Error! Reference source not found.** at 172:6–9) | Q. And did that video disclose or show electrical signals proportional to the position of the control shaft relative to the foot pedal control module?<br>A. No.<br>(Ex. **Error! Reference source not found.** at 178:17–21) | 172:9<br>Change: No<br>Reason: Mis-spoke |
| Q. Relative to the foot pedal control module?<br>A. Yes.<br>(Ex. **Error! Reference source not found.** at 172:10–11) | | 172:11<br>Change: No<br>Reason: Mis-spoke |

After Mr. Wissmuller gave this answer, Roland's counsel elicited the *exact type of testimony* Roland now argues it was deprived of the opportunity to pursue. *See* <u>Exhibit B</u>, 179:3-184:6. Specifically, Mr. Wissmuller testified as to why he did not believe the video in question disclosed an electrical signal proportional to the positive of the control shaft relative to the foot pedal control module:

10

> A. . . . . And [the video] went up to the point where you saw the shutter going up and down and a signal changing as the signal went up and down. Generally similar. Not necessarily proportional.
>
> Q. How do you know that it was generally similar but not necessarily proportional?
>
> A. Up was up and down was down. But how much – whether there was any mathematical functionality was something you couldn't determine.

*Id.* at 181:6-15; *see also id.* at 183:17-24 ("Q. . . .Was there anything in the video that led you to believe that the signal was not proportional? A. I couldn't draw a conclusion. Q. So you don't know one way or the other whether the signal was proportional? A. It is something that I would need to test and find out about.").

Moreover, Roland seeks re-open Mr. Wissmuller's deposition to "explore why Mr. Wissmuller changed his answers." Mot. at 10. But, again, Roland *already asked* Mr. Wissmuller these exact questions:

> Q. Why did you change your answers after you came back from the break?
>
> . . . .
>
> Q. So previously you recalled that the video did disclose that the signal generated by the foot pedal device is proportional to the position of the control shaft, but now you're changing your answer?
>
> A. On reflection, I'm concerned about the word 'proportional.' I don't think so.

Exhibit B at 179:13-180:23. Thus, Roland's argument that the changes at issue render the Second Deposition incomplete is belied by the *complete* transcript of the Second Deposition, including Roland's re-cross of Mr. Wissmuller that Roland omitted from its Motion and exhibits.

As the changes on the Errata are consistent with Mr. Wissmuller's testimony at the Second Deposition as clarified, as well as the First Deposition, and Roland had the opportunity to inquire of

11

Mr. Wissmuller as to his negative answers and the reason for such changes,[5] the Court should deny Roland's alternative request to re-open Mr. Wissmuller's deposition. *See Pina*, 740 F.3d at 791-92 (affirming district court's decision not to re-open deposition to permit the plaintiff to explore errata sheet changes where changes "constituted clarifications or corrections consistent with [the deponent's] original testimony"); *cf. Tingley*, 152 F. Supp. 2d at 121 (permitting re-opening of deposition where deponents made 22 substantive corrections because "the number and type of changes made to the depositions justify a reopening for the limited purpose of inquiring into the reasons for the changed answers and where the changes originated").

### III. Mr. Wissmuller's Pre-Errata Testimony May Be Used at Trial Only for Impeachment Purposes, in the Absence of Other Circumstances Allowing the Use of His Deposition Testimony for Any Purpose under Fed. R. Civ. P. 32.

Finally, Roland contends that the Court "should also allow Mr. Wissmuller's original deposition testimony to remain part of the record as admissible evidence at trial." Mot. at 11. Under Fed. R. Civ. P. 32, deposition testimony may only be used at a hearing or trial for purposes other than impeaching a witness under certain enumerated circumstances. *See, e.g.*, Fed. R. Civ. P. 32(a)(3) (deposition of a party or party designee); Fed. R. Civ. P. 32(a)(4) (unavailable witness). In the absence of any such circumstances, Roland may use Mr. Wissmuller's pre-errata testimony at trial only for impeachment purposes. *See Metayer v. PFL Life Ins. Co.*, No. Civ. 98-177-P-C, 1999 WL 33117063, at *3 (D. Me. July 15, 1999) ("The witness who changes his testimony on a material matter between the giving of his deposition and his appearance at trial ***may be impeached*** by his former answers . . . . There is no apparent reason why the witness who changes his mind between the giving of the deposition and its transcription should stand in any better case.") (emphasis added)

---

[5] To the extent that Roland seeks to re-open Mr. Wissmuller's deposition to inquire about discussions between Mr. Wissmuller and his deposition counsel, that line of inquiry would improperly invade the attorney-client privilege, as explained in detail in inMusic's opposition to the Motion to Compel, which inMusic incorporates herein to the extent applicable.

(quoting *Lutig v. Thomas*, 89 F.R.D. 639, 642 (N.D. Ill. Apr. 2, 1981)); *see also Liberty/Sanibel v. Gettys Grp., Inc.*, No. 2:06-cv-16-FtM-29SPC, 2007 WL 9718528, at *3 (M.D. Fla. Feb. 28, 2007) (permitting use of original deposition testimony to be used at trial "to the extent permitted by the Federal Rules, for a determination regarding the reliability of the deposition to be made by the trier of fact"); *Herring v. Teradyne, Inc.*, No. Civ. 01CV1835-L(JFS), 2002 WL 32068318, at *4 (S.D. Cal. Nov. 4, 2002) (errata changes may be used to impeach a witness at trial).

## CONCLUSION

For the foregoing reasons, inMusic respectfully requests the Court deny Roland's Motion in its entirety and award inMusic its reasonable expenses incurred in opposing the Motion. Fed. R. Civ. P. 37(a)(5)(B) (fees appropriate for non-movant defending unsuccessful motion to compel unless the "motion was substantially justified or other circumstances make an award of expenses unjust").

Respectfully submitted,

INMUSIC BRANDS, INC.
By its Attorneys,

*/s/ Craig M. Soctt*
Craig M. Scott (#4237)
Christine K. Bush (#5587)
Adam M. Ramos (#7591)
Hinckley, Allen & Snyder LLP
100 Westminster Street
Suite 1500
Providence, RI  02903-2319
(401) 274-2000 Phone / (401) 277-9600 Fax
cscott@hinckleyallen.com
cbush@hinckleyallen.com
aramos@hinckleyallen.com

> Laurel M. Gilbert, Esq. (*Pro Hac Vice*)
> *lgilbert@hinckleyallen.com*
> Gina K. Kim, Esq. (*Pro Hac Vice*)
> *gkim@hinckleyallen.com*
> 28 State Street
> Boston, MA  02109
> (617) 345-9000 Phone / (617) 345-9020 Fax

Dated:  November 26, 2019

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed through the ECF system on November 26, 2019 and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

*/s/ Craig M. Scott*

14