UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

INMUSIC BRANDS, INC.,

                Plaintiff,

    v.

ROLAND CORPORATION,

                Defendant.

Civil Action No. 1:17-cv-00010-M

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO STRIKE OR TO DISMISS COUNT VII OF
DEFENDANT'S AMENDED COUNTERCLAIM (DKT. NO. 107)**

Plaintiff inMusic Brands, Inc. ("inMusic"), moves pursuant to Fed. R. Civ. P. 12(f) and 12(b)(6) to strike or dismiss newly filed Count VII of Defendant Roland Corporation's ("Roland") Amended Counterclaim (Dkt. No. 107, ¶¶ 60-63).[1]

Roland's original Counterclaim sought only declarations of non-infringement and invalidity relating to the asserted patents-in-suit. Dkt. No. 34. Yet, Roland's Amended Counterclaim now includes Count VII that adds new factual allegations and an entirely new cause of action against inMusic for inequitable conduct. Dkt. No. 107, at pp. 24-26.[2] Roland did not seek leave of Court to file this Amended Counterclaim, and it comes well after the close of discovery. Roland's failure to seek leave of Court prior to filing is reason alone to strike Count VII.

Even if Roland had timely filed a motion to amend to assert Count VII, that motion would necessarily have been denied, which likely is explains why Roland tried to slip it in in the

---

[1] Even though Roland included a count claiming inequitable conduct, it seeks no express affirmative relief specific to that inequitable conduct claim. *See* Dkt. No. 107, ¶¶ 1, 8 and Prayer for Relief.
[2] The page references are to the ECF pagination at the top of the page, not the internal pagination at the bottom.

1

context of a "response" to the Third Amended Complaint. There is no plausible reason for Roland's undue delay in asserting this counterclaim, and permitting its inclusion after Roland's undue delay would prejudice inMusic, risk the re-opening of fact discovery and delay the merits resolution of this long-pending matter. Additionally, Count VII is futile as it fails to state a claim upon which relief can be granted.

In sum, whether the Court considers Count VII in the context of a motion to strike or a motion to dismiss, the outcome is the same: Roland should be precluded from asserting a claim of inequitable conduct and Count VII stricken from Roland's Counterclaim.

I. **BACKGROUND AND PROCEDURAL HISTORY**

Nearly four years ago, on January 10, 2017, inMusic filed this suit after it learned that Roland is offering for sale products that infringe one or more claims of three inMusic patents: U.S. Patent Nos. 9,424,827 (the "'827 patent"), 8,785,758 (the "'758 patent") and 8,039,724 (the "'724 patent"). Dkt. No. 1.

Roland moved to dismiss the Complaint. Dkt. No. 11. The motion was granted in part, and inMusic was permitted to amend. Dkt. No. 15, report and recommendation accepted June 9, 2017. On July 10, 2017, inMusic filed its Amended Complaint. Dkt. No. 17.

After Roland again threatened to file a motion to dismiss, inMusic moved for leave to file a Second Amended Complaint on July 24, 2017. Dkt. Nos. 19, 20. Later that same day, Roland filed a motion to dismiss the *Amended* Complaint, despite the pending motion to amend. Dkt. Nos. 21, 22. Roland also filed an opposition to inMusic's pending motion for leave to file a Second Amended Complaint. Dkt. No. 23.

On October 24, 2017, the Magistrate Judge recommended that Roland's motion to

dismiss be denied as moot[3] and granted inMusic's motion to amend. Dkt. No. 31, at pp. 2-5. On November 9, 2017, the Court issued a Text Order granting inMusic's motion for leave to file a Second Amended Complaint and denied Roland's motion to dismiss. On November 9, 2017, inMusic filed the Second Amended Complaint.

On November 22, 2017, Roland filed an Answer and Counterclaim. Dkt. No. 34. In the Counterclaim, Roland sought two forms of relief: (1) declaration of non-infringement of the patents-in-suit (Dkt. No. 34, ¶¶ 9-24); and (2) declaration of invalidity of the patents-in-suit (Dkt. No. 34, ¶¶ 25-59). Roland did not assert a claim for inequitable conduct. Dkt. No. 34.

        **A.**      **Roland's 2017 Inquiry of Mr. Wissmuller About the "Video."**

Jan Wissmuller, now retired, served as the Vice President of Engineering at inMusic. Mr. Wissmuller is a listed co-inventor of two of the patents-in-suit: the '758 patent, which pertains to an electronic hi-hat cymbal controller, and the '724 patent, which pertains to a removable electronic drum head. *See* Dkt. Nos. 33-2, 33-3. Mr. Wissmuller is not an inventor on the third patent-in-suit, the '827 patent, which pertains to an electronic drum with an enhanced playing area. *See* Dkt. No. 33-1.

On December 8, 2017, i.e. right after filing its Answer to the Second Amended Complaint and Counterclaim, Roland took Mr. Wissmuller's deposition (the "First Deposition") in a co-pending case in the Southern District of Florida. At the First Deposition, Roland's counsel examined Mr. Wissmuller on the '758 patent and two YouTube videos. Exhibit 1, excerpts of transcript of December 8, 2017 deposition of Jan Wissmuller, at 162:12-171:24. Mr. Wissmuller did not recall seeing either YouTube video, but he volunteered that he had seen a video that Mr. Wissmuller characterized as follows:

---

[3] Dkt. No. 31, at p. 2.

3

> Q. Is there anything else you recall about that video you had seen?
>
> A. No. It was a long time ago. Took a quick look at it, said, oh, that's cute, and...
>
> Q. Okay. You don't remember the website or anything?
>
> A. (Shaking head.)
>
> Q. That's a "no"?
>
> A. No, I do not.

*Id.* at 170:20-171:3.

### B. The *Markman* Proceeding and post-*Markman* Scheduling Order

On May 3, 2019, Judge McConnell referred claim construction to the Magistrate Judge to conduct a *Markman* hearing and issue a Claim Construction decision. The Magistrate Judge held an extended hearing on May 20, 2019 and issued a Report and Recommendation on June 12, 2019. *See* Dkt. No. 71. After a *de novo* review, the Court adopted the Report and Recommendation with a clarification relating to the '724 patent not at issue here. Dkt. No. 84.

On September 10, 2019, the parties filed a Joint Motion to Amend the Discovery Plan to extend the remaining discovery deadlines by one month. Dkt. No. 85. At that point, fact discovery was scheduled to close on September 27, 2019 (i.e. eight weeks after the Court's August 2, 2019 claim construction ruling). The parties asked the Court to extend the deadline for the fact discovery cut off to October 28, 2019. *Id.* at p. 2.

### C. Roland's 2019 Inquiry of Mr. Wissmuller About the "Video."

On September 25, 2019, Roland deposed Mr. Wissmuller in this case (the "Second Deposition"). Throughout that deposition, Roland's counsel asked Mr. Wissmuller questions that attempted to require Mr. Wissmuller (a lay witness) to provide sworn testimony as to whether certain patents, or devices, or videos met the limitations of the patents-in-suit as the

4

Court had construed the terms in the *Markman* process – a fundamentally unfair line of inquiry for a non-party lay witness.

Mr. Wissmuller tried to make clear that he could not respond to those limitation-by-limitation type questions with any certainty. As one example, Roland's counsel asked the following questions about the '758 patent:

> Q. Do you know what a position detector is?
>
> A. In common English, the phrase makes sense to me. I'm not sure what the legal term is after it's been through all the discussions that may have been had when the patent was written.
>
> Q. Well, just in the context of the '758 patent. That's what I'm asking about. In the context of the '758 patent, do you know what a position detector is?
>
> MR. SCOTT: Objection to form.
>
> A. Only generally. Again, I'm a little worried about the legal details. So I'm going to claim a certain level of incompetence in the way the legal aspect of that is defined. So in a general engineering way, I have a feeling for what I would expect a position detector to do. I don't know if that applies to what was written into the patent.

Exhibit 2, excerpts of transcript of September 25, 2019 deposition of Jan Wissmuller, at 31:17-32:9. Nevertheless, Roland's counsel asked Mr. Wissmuller to compare an unauthenticated "video" with the claim elements of the '758 patent even after he had made expressly clear that he lacked competence to testify about the scope of the patent's claims or the meaning of its terms.

On its face, Count VII of Roland's Amended Counterclaim is purportedly based on select portions of Mr. Wissmuller's Second Deposition relating to that "video." Dkt No. 107, ¶ 62

(referencing September 25, 2019 deposition, and generally pages 171-172 of the deposition transcript); *see also* Exh. 2, at 169:11 - 172:11.

Roland's misleading claims of "admissions" misrepresent Mr. Wissmuller's actual testimony. For example, Roland alleges that "Mr. Wissmuller admitted to seeing a video prior to the filing of the application for the 758 patent,"[4] yet, Mr. Wissmuller actually testified that he did not know when saw this "video." *Id.*, at 177:5-9. Roland includes a chart to suggest that Mr. Wissmuller testified that the "video" meets all of the limitations of claim 1 of the '758 patent. In actuality, Mr. Wissmuller testified that his memory of the video did not show a body portion configured to be supported by a hi-hat cymbal stand but, instead, that the body portion was supported by the lower half of the hi-hat (not the cymbal stand). *Id.*, at 177:22-178:8. Contrary to Roland's chart, Mr. Wissmuller testified that the video did not disclose or show electrical signals proportional to the position of the control shaft relative to the foot petal control module. *Id.*, at 178:17-21. Nor did it show any numerical readings whatsoever. *Id.*, at 178:22-24.

Roland's counsel sewed it up, asking the following question:

> Q. My question was, so **you don't know one way or the other whether the signal generated by the foot pedal control module is proportional to the control shaft relative to the foot pedal control module.· Correct**?
>
> A. Uh-hmm.· Yes.

*Id.*, at 184:2-7 (emphasis added). Overall, Mr. Wissmuller testified that he was confused by Roland's line of questioning. *Id.*, at 169:11-23; 176:6-22.

In short, Roland's Count VII is based on an intentional contortion of Mr. Wissmuller's testimony, none of which actually supports Roland's claim of inequitable conduct.

---

[4] Dkt. No. 107, at ¶ 62.

6

## II. ARGUMENT

### A. Roland Improperly Added a New Counterclaim Without Leave of Court

After receiving leave of Court, inMusic filed its Third Amended Complaint on October 16, 2020. That Third Amended Complaint (1) removed the reference to lost profits damages that inMusic is no longer pursuing; and (2) updated Count I to be consonant with infringement contentions inMusic served relating to the '827 patent. Dkt. No. 88 (Motion to Amend), at p. 1. The redline inMusic appended to the motion to amend evidences that inMusic made no changes to the allegations relating to the '758 patent. *See* Dkt. No. 88-2, at pp. 9- 13.

Yet Roland has now attempted to add Count VII to its Counterclaim, where it asserts inequitable conduct claims against inMusic relating to the '738 patent. Dkt. No. 107. Roland did not seek leave of Court to amend its Counterclaim to add the allegations of inequitable conduct.

Under Rule 15, a party may amend a "pleading" without leave of court in certain relatively narrow circumstances. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). As Chief Judge Saylor recognized in *Bern Unlimited, Inc. v. Burton Corp.*, 25 F. Supp. 3d 170, 177-78 (D. Mass. 2014), the entire spirit and purpose of the Rule 15 requirement for leave of Court prior to an amendment is so the court will have an opportunity to deny amendments that might cause undue delay, result in undue prejudice, result in the assertion of new claims that are futile or are asserted in bad faith, or otherwise involve abuses of the legal process. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962) (holding that leave should be freely given "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith ..., undue prejudice ..., futility of amendment, etc.")). Allowing a counterclaimant to assert entirely new

7

counterclaims, at its option, whenever the complaint has been amended would mean that "claims that would otherwise be barred or precluded could be revived without cause." *Bern,* 25 F. Supp. 3d at 179 (citing *Virginia Innovation Sciences, Inc. v. Samsung Elec. Co., Ltd.*, 11 F. Supp. 3d 622, 632 (E.D. Va. 2014)). "[T]he filing of an amended complaint cannot amount to a blank slate for the opposing party. If it could, the 'in response' language of Rule 15(a) would be rendered meaningless." *Southern New England Telephone Co. v. Global NAPS, Inc.*, No. 3:04-cv-2075 (JCH), 2007 WL 521162, at *3-4 (D. Conn. Feb. 14, 2007) (granting motion to strike counterclaims asserted in answer to amended complaint); *see also Wechsler v. Hunt Health Systems Ltd.,* 186 F. Supp. 2d 402, 415-19 (S.D.N.Y. 2002) (striking and dismissing new allegations, affirmative defenses and counterclaims). Granting that type of unfettered permission to defendants also "would also create an imbalanced, if not inequitable, situation where the plaintiff would be required to obtain leave to make amendments to its pleadings, but the defendant-counterclaimant would not." *Bern*, 25 F. Supp. 3d at 179.

In short, leave of court is required where a party wishes to assert new counterclaims in response to an amended complaint. *Id.* Roland unquestionably did not seek leave of court to file its Amended Counterclaim with newly added Count VII, so Count VII should be stricken.

**B.     Roland Should Not be Permitted to Add Claims for Inequitable Conduct.**

"While leave to amend 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), parties seeking the benefit of the rule's liberality have an obligation to exercise due diligence; unseemly delay, in combination with other factors, may warrant denial of a suggested amendment." *Quaker State Oil Ref. Corp. v. Garrity Oil Co*., 884 F.2d 1510, 1517-18 (1st Cir. 1989) (affirming district court's refusal to permit counterclaim where only two months remained in already extended discovery period and defendant offered no satisfactory explanation for its

8

delay). "Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." *United States ex rel Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (deferring to district court's denial of motion to amend).

Whether this filing is construed as a motion to dismiss for failure to state a claim under Rule 12(b)(6) or an objection to a motion for leave to amend pleadings based on futility, the standard is the same. *See Adorno v. Crowley Towing & Trans. Co.*, 443 F.3d 122, 126 (1st Cir. 2006). Roland must plead enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Here, even if Roland had properly sought leave to amend, it still should have been denied based on futility for failure to state a claim and undue delay.

### 1. Roland's Contrived Counterclaim for Inequitable Conduct Fails to State a Claim and is Futile.

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent. This judge-made doctrine evolved from a trio of Supreme Court cases that applied the doctrine of unclean hands to dismiss patent cases involving egregious misconduct...." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir.

9

2011) (citations omitted).  Through a claim of inequitable conduct, a patent infringement defendant asserts that the patentee obtained the patent-in-suit by making material misrepresentations to the PTO or by taking measures to suppress evidence that, if disclosed, would have prevented issuance of a patent.  *Id.* at 1285–87.

Responding to concerns about the expanding use of inequitable conduct allegations[5] as a strategic tool, the Federal Circuit revisited and recrafted the requirements for a showing of inequitable conduct.  In *Therasense*, the *en banc* court held that "the accused infringer must prove by clear and convincing evidence *that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it*."  *Id.* at 1290 (emphasis added).  The court also heightened the required showing for both materiality and intent to deceive, so that a party alleging inequitable conduct must show "but-for materiality" and that the intent to deceive is "the single most reasonable inference able to be drawn from the evidence."  *Id.* at 1290–92 (citation and internal quotation marks omitted).

In short, the *Therasense* court tightened the inequitable conduct standard to ensure that the defense is sustained only in egregious circumstances and to discourage parties from using it as a mere litigation tactic in garden-variety cases.  *Id.* at 1288–90; *see also Lexington Luminance LLC v. Osram Sylvania Inc.*, 972 F. Supp. 2d 88, 91 (D. Mass. 2013).

Assertions of inequitable conduct must be pled with particularity under Fed. R. Civ. P. 9(b).  *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).  To plead inequitable conduct with the requisite particularity under Rule 9(b), the pleading must identify

---

[5] The *Therasense* Court noted that inequitable conduct "has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system," and that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps." *Id.* at 1289 (quoting *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1454 (Fed. Cir. 1984) and *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988)).

the specific "who, what, when, where, and how" of the material misrepresentation or omission committed before the PTO. *Id.* at 1328.

A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b). *Id.* at 1328–29; *see also Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (pleadings must also permit the inference that the applicant "appreciated that [the omitted reference] was material."). Instead, a party must make an initial showing from which it may be plausibly inferred that (1) the individual knew of the information not disclosed; (2) the information not disclosed was but-for material to the prosecution of the patent; and (3) the specific intent to deceive is a reasonable inference from the facts alleged. *See Iqbal*, 129 S.Ct. at 1954 (plausibility); *Therasense*, 649 F.3d at 1289–90 (specificity); *Exergen*, 575 F.3d at 1328 (Rule 9(b) pleading requirements). The *Therasense* decision made clear that the court must take an active role in examining the propriety of inequitable conduct claims. 649 F.3d at 1289-90.

"Intent and materiality are separate requirements." *Id.* at 1290. The relevant "conditions of mind" for inequitable conduct include "specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327. "Although 'knowledge' and 'intent' may be averred generally, ... the pleadings [must] allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.* For example, the pleadings should include facts from which it would be reasonable to infer that a particular person subjectively believed a disclosure would prevent a patent from issuing. *Cf. id.* at 1328 ("knowledge ..., standing alone, was not enough to infer that the [applicant] also subjectively believed" (discussing analogous inquiry in trademark context)). Facts depicting gross negligence or negligence will not suffice. *Therasense*, 649 F.3d at 1290.

11

With these standards in mind, Roland's Count VII fails. Roland apparently identifies Mr. Wissmuller as the "who" for the purposes of the Rule 9(b) analysis, asserting that he "never ensured that the online video was disclosed to the PTO." Dkt. No. 107, at ¶ 103. Mr. Wissmuller is not a patent attorney, and Roland elicited no testimony from Mr. Wissmuller that he had any involvement in the patent application process[6] and/or that he had any appreciation whatsoever as to what might be "material" to a PTO examiner assigned to the examination of the '758 patent application.

Mr. Wissmuller testified that he was not even certain when he saw this vaguely referenced, unauthenticated "video," so Roland cannot plausibly allege that Mr. Wissmuller was aware of the "video" during any specific period relevant to the application process. Even if Roland arguably satisfied the "who" prong, Roland's Count VII still does not establish the "what," "where" and "how" of the alleged material omission. In fact, given Mr. Wissmuller's sworn testimony to the contrary, this Court <u>cannot</u> draw an inference that Mr. Wissmuller knew of the "video" reference during the relevant period of time (i.e. the "when"), nor can the Court infer that Mr. Wissmuller knew that some vague "video" was material and/or intended to deceive the PTO given his deposition testimony that he did not know one way or the other whether the "video" met all of the limitations of claim 1. Here, as in *Exergen*, "the allegations are deficient with respect to both the particularity of the facts alleged and the reasonableness of the inference of scienter." *Exergen*, 575 F.3d at 1329

Courts in this district and others have struck thinly pled inequitable-conduct defenses in patent cases. *See, e.g.*, *Lexington Luminance*, 972 F. Supp. 2d at 93 (dismissing an inequitable conduct defense and counterclaim where the defendant failed to meet *Exergen*'s requirement

---

[6] In fact, Mr. Wissmuller testified that he was not aware that an application was filed until he was asked to make an assignment and he had no memory of seeing the application for the '758 patent. Exh. 2, at 26:7-20. The first time he saw the patent's claims was right before his 2019 deposition. *Id.*, at 27:2-14.

12

because it failed to plead sufficient facts demonstrating that the patentee knew of the materiality of the information and deliberately withheld it from the PTO); *see also Drew Techs., Inc. v. Robert Bosch, LLC*, No. 12015622, 2014 WL 562458, at *5 (E.D. Mich. Feb. 13, 2014) (dismissing inequitable conduct claims and defenses for failing to plead the "why" and "how" of the alleged material omission under Exergen); *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, C.A. No. JKB-09-2657, 2011 WL 2415014, at *4 (D. Md. June 10, 2011) (granting motion to strike and denying leave to amend as futile because the factual allegations "do nothing more than recite the generic elements of the defense, and contain no 'particularized factual bases' whatsoever" (quoting *Exergen*, 575 F.3d at 1326-27)).

Because Roland fails to state a claim for inequitable conduct with newly filed Count VII, the count should be stricken or dismissed.

### 2. Roland Should Not be Permitted to Add the Count for Inequitable Conduct Because its Undue Delay Causes Prejudice to inMusic.

Again, had Roland properly filed a motion to amend, Roland would have been required to explain away its undue delay in asserting Count VII. Instead, it entirely skipped that step, leaving it to inMusic to reveal to the Court that Count VII is not only futile and entirely contrived, but also unduly delayed, prejudicing inMusic.

In *Emissive Energy Corp. v. NovaTac, Inc.*, C.A. No. 09–13 S, 2010 WL 2881291 (D.R.I. Jul. 28, 2010), the defendant moved to amend its Answer to assert new affirmative defenses and counterclaims one week before the end of fact discovery. The proposed amendment included a new counterclaim for inequitable conduct. *Id.* at * 1. At the hearing on the motion to amend, the Court questioned NovaTac at length about the timing of the motion, and when it learned of the alleged inequitable conduct. *Id.*

Applying the *Foman* standard, the Court acknowledged that "'[C]ourts may not deny an

amendment solely because of delay and without consideration of the prejudice to the opposing party, ... [however] it is clear that 'undue delay' can be a basis for denial.'" *Id.* at \*3 (quoting *Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1, 4 (1st Cir. 1983)). There, NovaTac offered no valid reason for the time it took to move to amend since it first filed its Answer. *Id.* Instead, NovaTac attempted to blame the plaintiff for its delay. *Id.* Rejecting that argument, the Court found that the unexcused delay would not be permitted to consume Court resources and drag the parties through extended litigation. *Id.* The Court affirmed the Magistrate Judge's Order denying the defendant's motion for leave to amend. *Id.* at \*4; *see also Summer Infant (USA) Inc. v. TOMY Int'l, Inc.*, No. 1:17-cv-549-MSM-PAS, 2020 WL 4437259, at \* 2 (D.R.I. Aug. 3, 2020).

In *Summer Infant*, the plaintiff filed a post-fact-discovery motion for leave to amend to assert a claim of bad faith patent infringement. *Summer Infant (USA), Inc. v. TOMY Int'l, Inc.*, No. 1:17-cv-549-MSM-PAS, 2019 WL 5540224 (D.R.I. Oct. 25, 2019). The defendant argued against the motion to amend, claiming, among other things, that the motion should be denied because Summer Infant exhibited undue delay in bringing the motion. *Id.* at \*1.

Summer Infant argued that it lacked foundation until the completion of a deposition in June 2019, a representation the Magistrate Judge noted "seems disingenuous" in light of an earlier deposition in 2017 that established the facts for the newly advanced claim. *Id.* at \*3. The Magistrate Judge emphasized that the standard is "undue delay … [**or**] undue prejudice." *Id.* (quoting *N. Ins. Co. of New York v. Albin Mfg., Inc.*, C.A. No. 06-190-S, 2008 WL 2019365, at \*1 (D.R.I. May 9, 2008)) (emphasis original). The Magistrate Judge found that the delay would result in prejudice because it left TOMY – which was not on notice that its actions would be the subject of a bad faith claim – unable to gather and produce factual material to rebut bad faith.

14

*Id.* (citing *In re Fustolo*, 896 F.3d 76, 89 (1st Cir. 2018) ("We think that prejudice is an almost inevitable concomitant in situations where, as here, the late amendment attempts to superimpose a new (untried) theory on evidence introduced for other purposes."); *N. Ins. Co. of New York*, 2008 WL 2019365, at *1 ("Without a valid reason for the delay, the Court cannot justify the inevitable prejudice that will result to the Defendants who would be faced with an entirely new cause of action.")). Considering the "totality of the circumstances," *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013), the Magistrate Judge denied the motion to amend. *Summer Infant*, 2019 WL 5540224 at * 3; *Summer Infant*, 2019 WL 5540224, at * 2 (performing de novo review and denying motion to amend).

The same analysis applies here. Roland deposed Mr. Wissmuller twice about the "video" – once in 2017 in the Florida Litigation, and a second time here 2019. If there were anything whatsoever to Roland's claim of inequitable conduct relating to Mr. Weissmuller's knowledge of a "video," Roland had the information as of 2017. It did nothing. Nor did Roland seek leave to amend after it took Mr. Wissmuller's testimony in September 2019 and purportedly elicited the testimony it contorts for Count VII. Instead, Roland waited until after discovery closed to twist Mr. Wissmuller's sworn testimony and unfurl this baseless claim, representing that Mr. Wissmuller made certain admissions at deposition where, in fact, he testified as to his confusion and that he was unsure whether certain limitations are met.

Were the Court to permit this late-breaking amendment after Roland's undue delay, prejudice to inMusic is certain. This case proceeded over the course of more than three (3) years, throughout all fact discovery, without any allegation of inequitable conduct. Allowing that claim now would force inMusic to contend with entirely new factual allegations and a legal theory after fact discovery closed and without any mechanism to probe Japan-based Roland to

explain this theory.

## III. CONCLUSION

For the forgoing reasons, inMusic's Motion should be granted, Count VII of the Amended Counterclaim should be stricken, and Roland should be precluded from asserting a counterclaim for inequitable conduct.

                        INMUSIC BRANDS, INC.

                        By its Attorneys,

                        */s/ Christine K. Bush*
                        Craig M. Scott (#4237)
                        Christine K. Bush (#5587)
                        Adam M. Ramos (#7591)
                        Laurel M. Gilbert (*pro hac vice*)
                        **Hinckley, Allen & Snyder LLP**
                        100 Westminster Street
                        Suite 1500
                        Providence, RI 02903-2319
                        (401) 274-2000 Phone
                        (401) 277-9600 Fax
                        cscott@hinckleyallen.com
                        cbush@hinckleyallen.com
                        aramos@hinckleyallen.com
Dated: November 20, 2020        lgilbert@hinckleyallen.com

## **CERTIFICATE OF SERVICE**

  I hereby certify that the foregoing document was filed through the ECF system on the 20th day of November, 2020 and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

               /s/ *Christine K. Bush*