UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| INMUSIC BRANDS, INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>ROLAND CORPORATION,<br><br>      Defendant. | Civil Action No. 1:17-cv-00010-M |

### REPLY IN SUPPORT OF INMUSIC'S RENEWED MOTION TO COMPEL PRODUCTION OF DOCUMENTS

When it suits Roland's purpose, it has granular product-by-product financial information. In the Florida litigation where Roland is the plaintiff, Roland's expert touted its detailed financial recordkeeping:

> 78. I understand that Roland tracks its worldwide financial performance on a consolidated basis in Japan, covering its subsidiaries in Japan, the U.S. and Europe, among others. According to Mr. Naoyuki Tamura, the Executive Vice President of Roland USA, Roland Corporation includes segment analyses in their monthly corporate board meeting reports. One such segment is the Drums and Percussion Products segment, which includes Roland's worldwide sales of drums and percussion instruments, including instruments covered by the Patents-in-Suit. . . .
>
> 79. Roland's financial and accounting system includes information about units and revenues associated with its Drums and Percussion Products, including the sale of electronic drum pads, cymbals and electronic drum kits. As of 2017, Roland's financial and accounting system provided for reporting of costs at a product-level. Under this accounting system, I understand that Roland reports profits at three main levels in their normal course of business: [Marginal Profit, Gross Profit, and Operating Profit] . . . .

<u>Exhibit 1</u>, excerpts of *Roland Corp. v. inMusic Brands, Inc.*, Case No. 1:17-cv-22405-MORENO/LOUIS (S.D. Fla), Dkt. No. 274-1, publicly filed redacted Expert Report of Suzanne

1

E. Heinemann dated February 8, 2019, at ¶¶ 78-79.[1] In a later report, Roland's expert confirmed that "Roland U.S. reports sales and granular by product information to Roland at numerous intervals every month." Exhibit 2, excerpts of *Roland Corp. v. inMusic Brands, Inc.*, Case No. 1:17-cv-22405-MORENO/LOUIS (S.D. Fla.), Dkt. No. 274-2, publicly filed redacted Supplemental Expert Report of Suzanne E. Heinemann dated August 19, 2019, at ¶ 38; *see also id.* at ¶ 44 ("The sales, units, manufacturing and selling cost information provided by Roland provided granular information on a product-by-product level and were specific to products sold in the U.S. through Roland U.S.").

Roland's claim that it does not have sales, revenue, cost, profit, pricing or inventory information for its products is simply not plausible. Its very careful parsing that it does not "run financial reports" is gamesmanship, and the same runaround inMusic has been battling for years. Far from mounting a substantive opposition to the Motion to Compel, Roland reveals precisely why the repeated meet-and-confers have gone nowhere and inMusic needs the Court's help. The Court should grant the Renewed Motion and end Roland's campaign to stall this case by denying inMusic core financial information necessary to litigate this dispute.

## ARGUMENT

### A.    inMusic's Motion Is Neither Untimely Nor Premature

Roland argues both that inMusic waited too long to file the Renewed Motion <u>and</u> that it's premature. *See* Dkt. No. 120 at 4-5. Neither is accurate. inMusic originally filed its Motion to Compel on November 19, 2019, shortly after receiving the deposition transcripts that alerted

---

[1] The same report also reflects that Roland maintains price list for its drum kits, *see* Exh. 1 at ¶ 36 n. 78 (prices redacted), and information sufficient to identify Roland's total sales and sales into U.S. retail channels, *see id.* at ¶¶ 54, 77, as well as that Roland uses MI SalesTrak data in its normal course of business to manage its operations, *id.* at ¶ 55. It also suggests that, contrary to Roland's statements in its Opposition, it <u>does</u> run financial reports on a monthly basis. *See id.* at ¶ 67 (referring to a monthly "Drums & Percussion" sales report).

2

inMusic to many of the deficiencies in Roland's production.  *See* Dkt. No. 95 at 5-8.  Roland cites no authority for its argument that inMusic's original Motion to Compel was time barred.  *But see Alharbi v. TheBlaze, Inc.*, 199 F. Supp. 3d 334, 347 (D. Mass. Aug. 9, 2016) ("Federal Rule of Civil Procedure 37 imposes no deadline for the filing of a motion to compel . . . .") (internal quotation marks omitted).  L.R. Cv. 26(c) speaks only to pretrial discovery and not discovery motions.  *See* L.R. Cv. 26(c) ("Unless the Court otherwise orders, pretrial discovery must be completed by the discovery closure date.") (emphasis added).  Crediting Roland, it can completely ignore its obligations under Rule 26 (including Rule 26(e)) and then claim an opposing party is time barred from seeking a Court Order compelling compliance with the Rules.

Roland's procedural argument also ignores that the Court expressly permitted inMusic to file a renewed motion to compel after an additional meet and confer effort.  *See* Text Order dated October 7, 2020.  Roland cannot plausibly deny the parties met and conferred on these discovery issues before reaching an impasse when Roland represented it would produce no further documents.  *See* Dkt. No. 115 at 16-22.  In short, Roland's procedural arguments are just more stalling and do not warrant denial of the Renewed Motion.

**B.      Roland Admits It Has Failed To Produce Relevant, Responsive Documents**

Roland does not dispute that it has not produced MI SalesTrak reports, information sufficient to identify all kits or components containing one or more of the Accused Products, or the financial information detailed in the Renewed Motion.  Instead, Roland offers a series of shifting excuses for its discovery failures, none of which has merit.

1. MI SalesTrak Reports

Roland does not deny that it has the requested MI SalesTrak Reports in its possession, custody or control, that it has not produced any, or that the reports are relevant.  Instead, it

3

suggests that it does not need to produce them. For that, Roland cites *Krause v. Buffalo and Erie County Workforce Dev. Consortium, Inc.*, 426 F. Supp. 2d 68, 89–90 (W.D.N.Y. 2005), which involved a motion to strike exhibits to a summary judgment filing. The court determined that because the exhibits involved voter registration cards and records from a Board of Elections, there was no prejudice to the other party because they had equal access to those publicly available records. Roland's invitation to equate subscription sales reports (where Roland has the subscription) with publicly available voting information is baseless.

Then Roland pivots to argue that inMusic "did not serve a document request seeking MI SalesTrak reports." Dkt. No. 120 at 5. As inMusic identified in the Renewed Motion, MI SalesTrak Reports are responsive at least to inMusic's Requests No. 30 and 31. Dkt. No. 115 at 6-7. Request No. 31 sought "**reports** . . . of electronic drum and/or cymbal equipment of Roland's competitors." Dkt. No. 115 at 7 (emphasis added). Roland does not dispute that the MI SalesTrak Reports encompass the electronic drum and/or cymbal equipment of its competitors. *See* Dkt. No. 114-5 at 81:5-9 (Roland's 30(b)(6) designee agreed that MI SalesTrak "provides periodic analyses of the electronic drum market, **including competitive pricing, competitors' products**") (emphasis added). Roland's own testimony confirms that the MI SalesTrak Reports are responsive to at least Requests Nos. 30 and 31.[2] Roland should be compelled to produce the MI SalesTrak Reports.

2. <u>Information Sufficient To Identify All Derivative Products Containing One or More Accused Products</u>

Next, Roland claims that inMusic "never raised Interrogatory No. 14 in any meet and confer" or its initial Motion. Dkt. No. 120 at 9. Again, not accurate. inMusic identified

---

[2] Roland's diversionary claim that inMusic previously misrepresented deposition testimony is baseless. *See* Dkt. No. 120 at 6. inMusic directly quoted Mr. Nishi's deposition testimony and attached the complete passage to its Initial and Renewed Motions. Dkt. No. 94-7 at 175; Dkt. No. 114-11 at 5.

Interrogatory No. 14 starting with its first meet-and-confer letter to Roland on this issue.  Dkt. No. 96-14 at 3.

Moreover, Roland tacitly admits that its response was incomplete, but now it claims that it updated its interrogatory response (after inMusic filed the Renewed Motion to Compel) to identify two drum kits missing from its production—kits that inMusic already identified as containing one or more Accused Products.  Dkt. No. 120-2 at ¶ 3; Dkt. No. 115 at 5 (identifying TD-50K180 and KD-50 Nocturne as containing one or more Accused Products).  Even with that supplement, Roland's document production and Second Amended Response to Interrogatory No. 14 still fail to identify at least the following derivative products inMusic has identified as likely containing one or more Accused Products: TD-25KVX, TD-50KV-RM, VAD503, and VAD506.  *Compare* Dkt. No. 115 at 5 *with* Dkt. No. 120-2 at ¶ 3 *and* Dkt. No. 114-6.[3]  inMusic has no way of knowing what other derivative products Roland is failing to identify, so the Court should require Roland to provide a complete response identifying <u>all</u> derivative products containing one or more Accused Product.

3.    <u>Sales, Inventory, Price, Cost and Other Missing Financial Information</u>

inMusic's Renewed Motion lays out the missing financial information for Accused Products and derivative products in painstaking detail.  Roland does not dispute that:  (1) the information requested is relevant; (2) the information requested is responsive to inMusic's requests for production; (3) Roland did not object to producing such information; and (4) Roland has not produced the information.  *See* Dkt. No. 120 at 7-8.  The only justification Roland offers for not producing this relevant and responsive information is that "Roland does not run financial

---

[3] *Compare, e.g.*, https://www.roland.com/global/products/td-25kvx/ (last visited Mar. 27, 2021) (identifying TD-25KVX as containing Accused Product KD-180) *with* Dkt. No. 120-2 at ¶ 3 (claiming that Mr. Murai is "unaware of any other Roland kits" including the KD-180 other than TD-50K180 and TD-50 Nocturne).

5

reports of the type Plaintiff requests concerning sales and costs every month." *Id.* at 7. Roland further claims it produced "the product sales inventory and financial information it had." *Id.*

That is not plausible. As set forth in the Introduction, Roland unquestionably has the requested information available; it simply is electing not to run the reports so it can claim they are not in a physical form at the moment. Generally, sophisticated parties (like Roland) would prefer to produce the summary reports rather than, for example, every single invoice for every single sale, to avoid the burden associated. But that is where Roland is dragging this dispute: either it runs the reports for the information sought through the end of 2020 and again for each quarter as the quarters close, or it produces all of the underlying source materials. inMusic has made every effort to be collaborative, but Roland's obstinate refusal to produce this basic information is meritless.

  **C.** **An Award of Fees Is Appropriate Under Fed. R. Civ. P. 37**

In its Renewed Motion, inMusic seeks its fees under Rule 37(a)(5)(A), which requires the payment of a movant's reasonable expenses incurred in making a successful motion to compel unless the opposing party's nondisclosure was substantially justified or other circumstances would render an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). Roland does not argue either prong to evade the fee shifting appropriate here. Even if the Court disagrees that inMusic is entitled to fees, there is no basis whatsoever for Roland to seek fees *against* inMusic. inMusic respectfully requests that the Court grant the Renewed Motion and award inMusic its fees incurred in making its initial and renewed Motions to Compel.

        INMUSIC BRANDS, INC.

        By its Attorneys,

        */s/ Christine K. Bush*
        Craig M. Scott (#4237)
        Christine K. Bush (#5587)
        Adam M. Ramos (#7591)
        Laurel M. Gilbert (*pro hac vice*)
        **Hinckley, Allen & Snyder LLP**
        100 Westminster Street
        Suite 1500
        Providence, RI 02903-2319
        (401) 274-2000 Phone
        (401) 277-9600 Fax
        cscott@hinckleyallen.com
        cbush@hinckleyallen.com
        aramos@hinckleyallen.com
Dated: March 29, 2021        lgilbert@hinckleyallen.com

## CERTIFICATE OF SERVICE

     I hereby certify that the foregoing document was filed through the ECF system on the 29th day of March, 2021 and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

        */s/ Christine K. Bush*